# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46933-2-II |
| Respondent, | |
| v. | |
| KEVIN LEE ESTES, | PUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Kevin Estes appeals from the trial court's judgment and sentence after a jury found him guilty of assault in the third degree and felony harassment, each with a deadly weapon enhancement. The trial court sentenced Estes to total confinement for life without the possibility of release under the persistent offender statute.[1] Estes argues that he received ineffective assistance of counsel. He also asserts in his statement of additional grounds (SAG) that his attorney did not advise him that a felony with a deadly weapon enhancement constituted a strike under the persistent offender statute. Because defense counsel's performance was deficient and there is a reasonable probability that counsel's deficient performance prejudiced the outcome of the trial, we reverse and remand for a new trial.[2]

---

[1] RCW 9.94A.570

[2] Because of our resolution of this case on this ground, we do not address the other issues Estes raised in his appeal and his SAG.

FACTS

I.    GENERAL OVERVIEW

On February 18, 2014, Estes visited an apartment shared by James Randle and Anthony Prusek. Prusek's girlfriend, Ashley Stoltenberg, was present and Estes flirted with her, making her uncomfortable.

Estes returned to the apartment the next day. He consumed alcohol and played video games with Randle and Prusek. Estes began talking about Stoltenberg and made statements about her breasts. Prusek told Estes that Stoltenberg did not like his comments. Shortly thereafter, an angry Stoltenberg came out of the bedroom and told Estes to stop or she would slap him. Stoltenberg testified that Estes stood up looking angry and said, "Time to die, bitch," while pulling a knife out of his pocket. 2 Report of Proceedings (RP) at 86. Stoltenberg knew that the blade was small enough to conceal in his pocket, but she could not say with certainty if the blade folded; she saw it for 10 seconds.

Prusek only caught the last word Estes spoke, which was "bitch." 2 RP at 132. Prusek stated that Estes stood up like he was going after Stoltenberg. Prusek grabbed Estes and pulled him down on the ground where they wrestled. Suddenly, Estes had a knife in his hand and flailed his arms. According to Prusek, Estes was still trying to get towards Stoltenberg. The knife cut Prusek's foot and then his pinky finger. Prusek described the blade as "three and a half, four inches" in length. 2 RP at 134. He stated that the blade could have done "grave harm" and "[w]as the type of a blade that could have cut through your skin and into muscle." 2 RP at 134. Stoltenberg called 911.

Randle took the knife away from Estes and went towards the kitchen. Stoltenberg saw Randle put the knife she believed Estes used on top of the refrigerator after Estes left. Randle also

remembered putting the knife on top of the refrigerator. Prusek went to the bathroom to get bandages and to clean himself up. Randle told Estes to leave because the police were coming and Estes left.

Officer Greg Massey was the first officer to respond. He found Estes sitting in his car in the driveway. Estes appeared angry and agitated, opened the car door, and when asked, told Massey he was in the apartment and had been in a fight. Massey was unsure but remembered Estes saying something like, "[H]e felt that he needed to rid the world of people like the two that were inside the apartment." 2 RP at 207-08. Massey searched Estes's person and seized a knife from him. That knife and a picture of it with a ruler beside it were admitted at trial. Massey described the knife as a fixed-bladed knife in a black sheath. The evidence technician who took the picture stated that the knife blade was about three inches long. Estes told Massey that the knife on his person was not the knife from the incident.

Officer Steven Pigman responded to the scene later and entered the apartment. He noticed a knife on the refrigerator and asked Stoltenberg whether it was used in the assault. She told him "[Y]es." 3 RP at 256. Randle believed the officers took the knife from on top of the refrigerator. When the State showed Randle the knife in evidence, he could not remember if it was the knife he took from Estes that day. To Pigman's knowledge, the knife on the refrigerator was not taken into evidence. Pigman believed the knife he saw in the apartment was six inches in length total. He did not remember the length of the blade but believed it was exposed. He also stated, "I didn't inspect it at all." 3 RP at 269. The State asked Pigman if the knife he saw was the type that could do someone harm. Pigman answered that it could. Pigman also confirmed that the knife would do serious bodily injury.

3

II.    PROCEDURAL HISTORY

The State charged Estes with two counts of assault in the second degree, against Prusek and Stoltenberg respectively, and one count of felony harassment against Stoltenberg.  Each count carried a deadly weapon enhancement.  In the charging language of the information, the State referenced Estes's "multiple current offenses," which because of an already high offender score, would result in some of his offenses going unpunished without an exceptional sentence.  Clerk's Papers (CP) at 245, 246.

In February 2014, the State filed a persistent offender notice indicating that Estes potentially faced a third strike.[3]  The notice stated,

> [T]he offense of assault in the second degree; assault in the second degree; felony harassment, with which you have been charged, is a "Most Serious Offense" as defined in RCW 9.94A.030.  If you are convicted at trial or plead guilty to this charge or any other most serious offense, and you have been convicted on two previous occasions of other "most serious offenses," you will be classified at sentencing as a 'Persistent Offender,' as defined in RCW 9.94A.030 and your sentence will be life without the possibility of parole as provided in RCW 9.94A.570.

CP at 381 (emphasis omitted).

Prior to trial, the court heard motions.  Estes's lawyer argued that the State should not be allowed to mention or introduce the knife found on Estes's person.  The trial court determined that whether or not the knife was used or readily accessible was a question for the jury.  The court found the knife taken from Estes's person was relevant and "would certainly be admissible, if for

---

[3] Estes's previous convictions include two counts of promoting prostitution, manslaughter, assault in the third degree, unlawful possession of a firearm, unlawful possession of a controlled substance, domestic violence assault in the third degree, and two counts of assault in the second degree.  The manslaughter and assault in the second degree counts were violent offenses.  During trial, Estes stipulated to the manslaughter conviction.

4

no other reason than just the enhancement." 1 RP at 49. Estes's lawyer also filed a *Knapstad*[4] motion in which he argued the assault in the second degree counts should be dismissed because there was no evidence to support them. Estes's criminal history was attached to the *Knapstad* motion.[5]

During Estes's jury trial, Estes's lawyer again objected to the admission of the knife taken from Estes's person. The trial court overruled the objection. Estes's lawyer also objected to specific jury instructions, including all instructions on assault in the third degree. The trial court acknowledged the objection but instructed the jury on assault in the third degree and assault in the fourth degree, which are inferior degree crimes to assault in the second degree. Estes did not object to the court's instructions on assault in the fourth degree or on the deadly weapon enhancements. During the discussion of the jury instructions, defense counsel questioned whether the language in the deadly weapon enhancement special verdict form for count II, assault in the second degree against Stoltenberg, should be changed because assault in the fourth degree did not have a deadly weapon enhancement. At the same time, defense counsel objected again to the assault in the third degree instruction but did not object to the deadly weapon enhancement special verdict form for the felony harassment charge.

During closing argument, Estes's lawyer contended that the State failed to prove Estes assaulted anyone with a knife and that the State could not prove that the knife in evidence was the knife from the apartment. Defense counsel emphasized the inconsistencies in the witnesses' and the police officers' testimony. Defense counsel argued that Estes was facing away from

---

[4] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

[5] The court's ruling on the *Knapstad* motion is not a part of the record on appeal. However, we assume that the trial court denied the motion because the trial went forward on the assault in the second degree charges.

Stoltenberg when he allegedly threatened her. Counsel also argued that Stoltenberg "saw an opportunity to get rid of a problem, by making this statement and this story." 4 RP at 459. Regarding the knife, defense counsel presented the theory that the knife was not used to cause harm to Prusek; instead, any harm occurred as the result of an accident. He also argued that because the knife from on top of the refrigerator was not in evidence, the jury was left to speculate about what it looked like. He stated, "They remember it being long and big and whatever, but it's not here." 4 RP at 468-69.

The jury ultimately found Estes guilty of assault in the third degree against Prusek and felony harassment against Stoltenberg. The jury also found that Estes was armed with a deadly weapon at the time of the commission of both crimes.

When the court discussed scheduling Estes's sentencing, the State announced, "As the Court is aware, this is a third strike case." 4 RP at 504. Defense counsel responded, "He wasn't convicted of a strike offense." 4 RP at 504. The State explained, "[T]he Defendant is a third strike case because of the deadly weapon enhancements." 4 RP at 504.

Post-trial, Estes's lawyer filed a motion to dismiss the deadly weapon enhancements, under CrR 7.4. At the motion hearing, defense counsel argued that the jury could not find that the knife was "used in such a way that was likely to or may bring about death" because it found Estes not guilty of assault in the second degree and that the jury could not find that the weapon was a "per se" deadly weapon. 4 RP at 510. Defense counsel provided the definition of the word "blade" and argued that the "cutting implement" was less than three inches long. 4 RP at 510. When the

State pointed out that Prusek testified that the knife was three and a half to four inches long, defense counsel objected saying that that was not the testimony. The State then argued that defense counsel failed to make a motion to dismiss at the close of the State's case, or at the close the trial, and failed to object to the jury instructions on the knives. The trial court denied the motion to dismiss.

Because these convictions constituted Estes's third strike, the trial court sentenced him to total confinement for life without the possibility of release. At the close of sentencing, the State also put on the record,

> [O]ur office has a policy on third strike cases where the defense, the defense has an opportunity to seek mitigation, and come to our office, asking for something other than a third strike resolution. *The Defendant, Mr. Estes, declined to enter into any negotiations whatsoever during the entire course of this case. Also he did not wish to avail himself of the mitigation process.*

4 RP at 534 (emphasis added). The court responded, "I will just say that, as I indicated, this is not the kind of strike that we typically would be looking for as a community to be a third strike, so if there were no other options available, I guess I see that as another reason why we are here." 4 RP at 534. Estes appeals.

## ANALYSIS

### INEFFECTIVE ASSISTANCE OF COUNSEL

Estes argues that his defense counsel provided ineffective assistance because he did not know that Estes would be sentenced as a persistent offender if the jury convicted him of any felony with a deadly weapon enhancement. In his SAG, Estes also asserts that his attorney "did not advise [him] that the weapon enhancement was a strike in itself [sic] or when attached to a[n]

Assault [in the third degree] or felony harassment."[6]  SAG at 2.  We agree that Estes received

ineffective assistance of counsel.

A.       Standard of Review

We review claims of ineffective assistance of counsel de novo.  *State v. Sutherby*, 165

Wn.2d 870, 883, 204 P.3d 916 (2009).  To prevail on a claim of ineffective assistance of counsel,

the appellant must show both (1) that defense counsel's representation was deficient, and (2) that

the deficient representation prejudiced the defendant.  *State v. Grier*, 171 Wn.2d 17, 32-33, 246

P.3d 1260 (2011) (applying *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L.

Ed. 2d 674 (1984) test).  Representation is deficient if after considering all the circumstances, the

performance falls "'below an objective standard of reasonableness.'"  *Grier*, 171 Wn.2d at 33

(quoting *Strickland*, 466 U.S. at 688).  Prejudice exists if there is a reasonable probability that

except for counsel's errors, the result of the proceeding would have differed.  *Grier*, 171 Wn.2d at

34.

An appellant making an ineffective assistance of counsel claim faces a strong presumption

that counsel's representation was effective.  *Grier*, 171 Wn.2d at 33.  Legitimate trial strategy or

tactics cannot serve as the basis for a claim of ineffective assistance of counsel.  *State v. Kyllo*, 166

Wn.2d 856, 863, 215 P.3d 177 (2009).  However, "[w]here an attorney unreasonably fails to

---

[6] Estes cites as authority, article 1, section 14 of the Washington State Constitution, the Eighth amendment of the United States Constitution, and the Rules of Professional Conduct.  It is unclear whether Estes intends to argue ineffective assistance of counsel or cruel and unusual punishment. Because we reverse this case on the former issue, we do not address the latter.  *See State v. Weller*, 76 Wn. App. 165, 167, 884 P.2d 610 (1994) ("An appellate court will not decide a constitutional issue when the case can be decided on other grounds.").  In addition, in so far as this assertion implicates matters outside the record, we do not consider it.  A personal restraint petition is the proper vehicle for such an issue.  *State v. Burke*, 132 Wn. App. 415, 419, 132 P.3d 1095, 1097 (2006).

8

research or apply relevant statutes without any tactical purpose, that attorney's performance is constitutionally deficient." *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 102, 351 P.3d 138 (2015). "'An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*.[7]'" *Yung-Cheng Tsai*, 183 Wn.2d at 102 (quoting *Hinton v. Alabama*, ___ U.S. ___, 134 S. Ct. 1081, 1089, 188 L. Ed. 2d 1 (2014)). Failing to conduct research falls below an object standard of reasonableness where the matter is at the heart of the case. *See Kyllo*, 166 Wn.2d at 868.

Under the "persistent offender" statute, "[A] persistent offender shall be sentenced to a term of total confinement for life without the possibility of release." RCW 9.94A.570. A "persistent offender" is a person who "[h]as been convicted in [Washington] of any felony considered a most serious offense" and who previously "[h]as . . . been convicted as an offender on at least two separate occasions . . . of felonies that under the laws of [Washington] would be considered most serious offenses." Former RCW 9.94A.030(37)(a)(i)-(ii) (2012). The definition of "[m]ost serious offense" includes a list of specific felonies; however, it also encompasses "[a]ny other felony with a deadly weapon verdict under RCW 9.94A.825." Former RCW 9.94A.030(32)(t). A "deadly weapon" is "an implement or instrument which has the capacity to inflict death and from the manner in which it is used, is likely to produce or may easily and readily produce death." RCW 9.94A.825. "[A]ny knife having a blade longer than three inches" is a deadly weapon. RCW 9.94A.825.

---

[7] *Strickland*, 466 U.S. 668.

B.      Third Strike

Estes argues that his counsel's representation was deficient because he failed to thoroughly investigate the legal impact of a felony conviction accompanied by a deadly weapon enhancement. He argues that as a result, his lawyer failed to vigorously defend Estes against the deadly weapon enhancements and could not weigh alternatives or make reasoned decisions.  Because the undisputed evidence supports this argument, we agree.

1.      Deficient Representation

Where an attorney is ignorant of a point of law that is fundamental to the case and fails to perform basic research on the point, his conduct is unreasonable.  *Yung-Cheng Tsai*, 183 Wn.2d at 102.  A defense lawyer must thoroughly research a case so as to be able to properly advise his or her client.  *See State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006) (holding defense counsel's performance was deficient where she knew her client had an extensive prior history and failed to ascertain through investigation that her client was at risk of a third strike and to advise him that, if convicted at trial, he faced a life sentence).

Estes argues, "[Counsel] was unable to weigh alternatives and make informed decisions about tactics," because he did not understand the charges against Estes.  Br. of Appellant at 20. The record shows that defense counsel did not realize Estes was at risk of a third strike from the assault in the third degree charge with the deadly weapon enhancement.  Additionally, defense counsel seemed to be unaware of the third strike attached to the felony harassment crime with a deadly weapon enhancement, which was charged from the start.

Before trial, defense counsel received the State's persistent offender notice.[8] The charging document language stated that Estes had multiple prior convictions. Additionally, Estes's lawyer attached Estes's criminal history to a motion filed with the trial court; therefore, the defense attorney would have been at least aware of the seriousness of Estes's criminal record. However, after the jury returned a verdict of guilty on assault in the third degree and felony harassment, both with deadly weapon enhancements, the State said, "As the Court is aware, this is a third strike case." 4 RP at 504. In response, defense counsel stated, "[Estes] wasn't convicted of a strike offense." 4 RP at 504. This comment demonstrates that only then, after the verdict, did Estes's lawyer realize Estes was convicted of two offenses that made him a persistent offender. Only after that did Estes's lawyer move to dismiss the deadly weapons enhancements. As the State pointed out during argument on the motion, defense counsel did not make a motion to dismiss the charges at the close of the State's case or at the close of trial, and did not object to the jury instructions on a deadly weapon.

Estes also argues that defense counsel's failure to object to Pigman's testimony about the knife being a deadly weapon, his failure to remember that Prusek stated the knife was three and a half to four inches long, and his failure to emphasize a lack of evidence that the knife found was actually on Estes during the altercation, demonstrate that he was unaware of the importance of the enhancements. On their own, these actions do not equate to ineffective assistance of counsel. For

---

[8] The notice the State provided did not accurately state the law. It read: "assault in the second degree; assault in the second degree, felony harassment, with which you have been charged, is a 'Most Serious Offense' as defined in RCW 9.94A.030." CP at 381 (emphasis omitted). Felony harassment, RCW 9A.46.020, is not a third strike crime in and of itself. It only becomes a strike when a deadly weapon enhancement attaches to it. The same is true for the crime of assault in the third degree. Former RCW 9.94A.030(32)(t). Because the notice is deficient, it is even more evident that defense counsel did not do additional research to familiarize himself with the persistent offender law.

instance, as the State points out, defense counsel's failure to object may well have been trial strategy to avoid drawing attention to the comment. However, as in *Yung-Cheng Tsai*, trial counsel's conduct here indicated that he did not understand the importance of one of the key matters in this case and did not adequately prepare. 183 Wn.2d at 101-02. We conclude that defense counsel's conduct clearly demonstrates he failed to fully research the charges and appreciate their significance to Estes's case.

The dissent asserts that there is a lack of evidence on the issue of what Estes's lawyer knew about Estes being convicted of a third strike. But the undisputed direct evidence clearly shows that the lawyer had no knowledge that convictions for assault in the third degree and felony harassment with deadly weapon enhancements were most serious offenses. At the hearing to schedule sentencing, Estes's counsel stated, "He wasn't convicted of a strike offense." 4 RP at 504. The State clarified, "[T]he Defendant is a third strike case because of the deadly weapon enhancements." 4 RP at 504. This direct evidence, accompanied by the circumstantial evidence presented throughout this case, clearly refutes the dissent's argument that this language is susceptible to more than one meaning and is not meaningful.

Estes compares his case to *State v. Felton*, 110 Wis. 2d 485, 329 N.W.2d 161 (1983).[9] In *Felton*, defense counsel, who represented a woman charged with murder in the first degree for shooting her husband while he slept, only put on a battered spouse defense, not a heat-of-passion defense. 329 N.W.2d at 170. The woman was convicted of murder in the second degree and appealed, arguing ineffective assistance of trial counsel. *Felton*, 329 N.W.2d at 162. Defense counsel admitted he was unaware the heat-of-passion defense could be used in the case. *Felton*,

---

[9] Estes and this court acknowledge that this case is persuasive authority only and does not carry the weight of precedential authority.

329 N.W.2d at 170. The Wisconsin Supreme Court ultimately held defense counsel was ineffective because he failed to familiarize himself with the relevant law when formulating his client's defense. *Felton*, 329 N.W.2d at 169-70. The *Felton* court acknowledged its hesitance to second guess trial counsel's decisions with an evaluation in hindsight, but stated that "prejudice does exist if the facts presented at trial or in the postconviction hearing would justify the submission of a defense . . . to the jury." 329 N.W.2d at 171.

Estes argues that his counsel's performance, as in *Felton*, was deficient because he failed to familiarize himself with the relevant law and thus, was ill-equipped to provide his client with a full defense. While Washington courts are also hesitant to second guess decisions of trial counsel in hindsight, we conclude that here, defense counsel's performance fell below a reasonable standard and thus, was deficient.

2. Prejudice

Estes must in turn show that counsel's deficient performance was prejudicial or undercut confidence in the result of the proceeding. *State v. Leavitt*, 49 Wn. App. 348, 359, 743 P.2d 270 (1987). Estes argues that a line of defense was foreclosed because of counsel's ignorance of the law. He contends that defense counsel would have put on a more robust defense during trial, specific to the enhancements, had he understood. We disagree.

Estes's attorney made several motions to keep the knife found on Estes out of evidence, both before and during trial. He also moved to exclude pictures of that knife. The trial court denied both motions. Further, defense counsel attacked Prusek's, Stoltenberg's, and Pigman's memory regarding the knife that was in the apartment. And, during closing argument, defense counsel presented the theory that the State failed to prove Estes assaulted anyone with a knife and

that the State could not prove that the knife in evidence was the knife in the apartment. Estes has not shown prejudice on this point.

However, Estes also raises the issue of prejudice in his SAG. He states, "[My defense attorney] did not advise me that the weapon enhancement was a strike in itself [sic] or when attached to a[n] Assault [in the third degree] or felony harassment." SAG at 2. Effective assistance of counsel in a plea bargaining context requires that counsel "'actually and substantially [assist] his client in deciding whether to plead guilty.'" *State v. James*, 48 Wn. App. 353, 362, 739 P.2d 1161 (1987) (alteration in original) (quoting *State v. Osborne*, 102 Wn.2d 87, 99, 684 P.2d 683 (1984)). Representation must include not only communicating actual offers, but discussion of tentative plea negotiations and the strengths and weaknesses of a defendant's case so that the defendant knows what to expect and can make an informed judgment whether or not to plead guilty. *State v. Edwards*, 171 Wn. App. 379, 394, 294 P.3d 708 (2012). Counsel must "'reasonably evaluate the evidence'" against the defendant. *Edwards*, 171 Wn. App. at 394 (quoting *State v. A.N.J.*, 168 Wn.2d 91, 111, 225 P.3d 956 (2010)). Uncertainty about the outcome of plea bargain negotiations should not prevent reversal where confidence in the outcome is undermined. *James*, 48 Wn. App. at 363.

Here, it is clear from the record that Estes's lawyer did not understand the consequences for Estes if he was convicted of any felony with a deadly weapon enhancement. Furthermore, Estes's situation is different from *Crawford*, in which our Supreme Court held that the defendant could not show prejudice from counsel's deficient performance where there was no indication the State would offer a non-strike offense. 159 Wn.2d at 100. Here, the State specifically stated at the sentencing hearing that it offered to work with Estes to avoid a third strike but that Estes declined to negotiate. Because Estes's lawyer did not fully understand the consequences of the

convictions in this case, he could not fully inform Estes of his options regarding mitigation as offered by the State.

Plea bargaining is a part of defense strategy. Where the failure to plea bargain is based on ignorance of the law and, consequently, a failure to advise a client of the potential consequences of failing to negotiate, prejudice is demonstrated. *See Crawford*, 159 Wn.2d at 100. We cannot say that Estes's lawyer provided him adequate counsel, and thus, our confidence in the result is undermined. We conclude that Estes suffered prejudice because of defense counsel's lack of fluency with the law to the extent that there is a reasonable probability it impacted the outcome of the proceeding.

Because Estes received ineffective assistance of counsel, we reverse the convictions and remand for a new trial.

_____
Melnick, J.

I concur:

_____
Sutton, J.

MAXA, J. (dissenting) — I would agree with the majority that Kevin Estes received ineffective assistance of counsel *if* the record showed that defense counsel was unaware that the deadly weapon enhancements made his third degree assault and felony harassment charges strike offenses. However, the record simply is inconclusive regarding what defense counsel knew or did not know. Accordingly, I dissent.

Defense counsel never stated that he did not know that convictions for third degree assault and felony harassment with deadly weapon enhancements constituted strikes under the persistent offender statute. The majority's conclusion that defense counsel did not know that Estes's convictions constituted a third strike primarily is based on a single statement from defense counsel. When the State said, "As the Court is aware, this is a third strike case," defense counsel responded, "[Estes] wasn't convicted of a strike offense." 4 Report of Proceedings at 504.

Defense counsel's statement certainly could give rise to an inference that he was unaware of the third strike implications of Estes's convictions. However, that is not the only explanation for defense counsel's statement. Defense counsel may have been momentarily confused or simply may have misspoken. Nothing in the record discloses what defense counsel *actually* knew, what Estes knew, or what defense counsel told Estes about whether Estes's convictions would be third strikes.[10]

The majority also references Estes's refusal to engage in any negotiations with the State in order to avoid a third strike, and seems to suggest that this fact indicates that defense counsel

---

[10] In his statement of additional grounds, Estes asserted that defense counsel did not advise him that the weapon enhancement would result in his convictions becoming strike offenses. However, this assertion is not part of the appellate record and cannot be considered in evaluating Estes's ineffective assistance of counsel claim.

16

did not know that Estes was facing a third strike if convicted. However, there certainly are many other reasons why a defendant might decline to negotiate.

The absence of any meaningful evidence regarding what defense counsel actually knew is fatal to Estes's ineffective assistance of counsel claim. The starting point in any ineffective assistance of counsel analysis is the strong presumption that defense counsel's performance was effective. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). This presumption cannot be overcome by speculation or even an inference about what defense counsel knew or did not know about the third strike implications of Estes's convictions.

If defense counsel *in fact* did not know that Estes's convictions were third strikes under the persistent offender statute, Estes is not without a remedy. He can file a personal restraint petition in which he presents sworn testimony to support his ineffective assistance of counsel claim. If that testimony or findings following a reference hearing demonstrate defense counsel's lack of knowledge, Estes may be entitled to a reversal of his convictions. However, based on the record on *this* appeal, Estes cannot establish ineffective assistance of counsel. As a result, I would affirm Estes's convictions.

MAXA, A.C.J.

17