IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37418-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ALBERTO ALVAREZ, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury convicted Alberto Alvarez of extortion in the second degree. On appeal, we affirm his conviction. We direct the superior court to strike the imposition of community custody supervision fees imposed on Alvarez.

## FACTS

Alberto Alvarez engaged in an intimate relationship with Esther, a pseudonym. After the relationship ended, Alvarez sent intimate pictures of Esther to third parties and posted them to social media accounts created in her name, in an attempt to extort money from her.

## PROCEDURE

The State of Washington charged Alberto Alvarez, by information, with one count each of extortion in the second degree, disclosing intimate images, and cyberstalking.

The State later filed a substantively similar amended information.

On the first day of trial, the State submitted a second amended information. This second amendment replaced the word "photographs" with the word "money" in the description for the count of second degree extortion. The modified language read that Alberto Alvarez "obtained or attempted to obtain property or services, *money*, from [Esther]." Clerk's Papers (CP) at 37 (emphasis added). Alvarez objected to the State's last-minute amendment to the information. The trial court reasoned that the late amendment did not prejudice Alvarez because the information, as amended, remained consistent with the probable cause affidavit. Still, the court allowed defense counsel to request a continuance. Defense counsel responded that Alvarez desired to proceed to trial that day.

During jury selection, defense counsel moved to exclude juror 72, former prosecutor Kevin Page, for cause. Counsel explained that Page previously prosecuted him for driving under the influence (DUI). The State agreed to exclude Page. RP 59. The trial court granted defense counsel's request.

During Esther's testimony, the State asked her about events occurring before she and Alberto Alvarez ended their intimate relationship:

> And then things got—out of hand, abusively, and—one day particular [sic]—he put his hands on me and—

2

Report of Proceedings (RP) (Jan. 30, 2020) at 185. In the middle of Esther's answer, defense counsel objected and moved to strike Esther's statement based on a previous order in limine prohibiting discussion of Alvarez's prior bad acts. Esther's response would likely have mentioned an incident, about which the State charged Alvarez with assault. The State later dismissed the assault charge. With defense counsel's objection, the trial court removed the jury from the courtroom.

The appellate record does not contain the motion or order in limine defense counsel referenced. Although the trial court granted the motion in limine, the court, during Esther's testimony, did not recall the motion being as specific as counsel claimed. The court remembered the order as only excluding events related to pending charges against Alvarez for prior domestic violence against Esther. Defense counsel insisted that he specifically sought to exclude mention of all of Alvarez's earlier bad conduct. After the jury returned following a recess, a prudent trial court sustained defense counsel's objection and instructed the jury to disregard Esther's "last response." RP (Jan. 30, 2020) at 226.

At trial, the State presented, as evidence, more than 500 printout pages of snippets of texts between Alberto Alvarez and Esther. During the State's direct examination of Esther, the prosecuting attorney asked about specific text messages with Alvarez. Defense counsel, finding the State's strategy problematic, moved to publish the entirety

of exhibits 8 through 11 and requested the court to direct the jury to read through the entire exhibits.  The trial court granted defense counsel's request.

The State sought to publish social media messages sent between Alberto Alvarez and Esther with photographs of Esther redacted.  Defense counsel objected to redacting the photos.  The State withdrew its request to publish redacted versions of the photos.

At the prosecution's request, Esther read aloud, to the jury, a portion of the social media messages between her and Alberto Alvarez:

> I [Esther] said, "No, you're trying to fuck me over," and he [Alvarez] said, "Lazy."  And I said, "Like I can't defend myself."
> And he said, "Said the bitch *breaking windows*."
> And then I said "LMAO," laugh my ass off, "You're threatening me for money.["]
> And he said, "Fuck you.  My money."

RP (Jan. 31, 2020) at 54-55 (emphasis added).  The State sought to establish that Alberto Alvarez's motive for extorting Esther for money was based on his belief that Esther's brother broke Alvarez's car windows.

After the State rested its case, the trial court questioned whether the State had failed to establish a jurisdictional element for the charge of disclosing intimate images.  But the court dismissed the charge anyway due to insufficient evidence that any third parties received the images Alberto Alvarez allegedly sent.

The trial court asked Alberto Alvarez a series of questions to verify his understanding about his right to testify.  RP (Jan. 31, 2020).  Alvarez affirmed that he

4

understood his rights and that defense counsel addressed all of his questions about his

right.

> Pictures were sent out in the context of that demand, "Give me more money." And the—the threat was made explicit: "If you give me money I'll stop sending out the pictures."
> . . . .
> But again, it's in the evidence. *It's in the text messages*.

RP (Feb. 3, 2020) at 275 (emphasis added). Defense counsel did not object to the State's

remarks.

The jury could not reach a verdict on the charge of cyberstalking. Thus, the trial

court declared a mistrial on that count. The jury returned a verdict of guilty on the

remaining count of extortion in the second degree.

The trial court held a sentencing hearing on February 21, 2020. The court

sentenced Alberto Alvarez to fourteen months' confinement and twelve months'

community custody on his sole conviction for second degree extortion.

At the end of the sentencing hearing, the trial court discussed the imposition of

legal financial obligations. The court imposed the mandatory $500 victim penalty

assessment. Then, pursuant to *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680

(2015), the sentencing court inquired into Alberto Alvarez's ability to pay discretionary

costs. The court found Alvarez indigent and waived all discretionary financial

5

obligations. The trial court stated:

> And with regard to the *Blazina* factors, Mr. Alvarez, *it looks like the only finding is that the fine that is requesting to be imposed is mandatory*, so I don't think I have to make so much of an assessment as far as your ability to pay.

RP (Feb. 21, 2020) at 7 (emphasis added).

In the judgment and sentence, all of the provisions in the "Community Custody" section were marked as applicable. One of these provisions ordered that, while on community custody, Alberto Alvarez must pay supervision fees as determined by the Department of Corrections.

## LAW AND ANALYSIS

### Community Custody Fees

Alberto Alvarez requests, based on his indigency, we remand to the sentencing court to vacate his obligation to pay community custody supervision fees. The State correctly concedes the need for the vacation in accordance with *State v. Dillon*, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, *review denied*, 195 Wn.2d 1022, 464 P.3d 198 (2020). We reverse and remand for this sole purpose.

### STATEMENT OF ADDITIONAL GROUNDS

Alberto Alvarez assigns a plethora of errors in a statement of additional grounds.

Probable Cause

Alberto Alvarez argues that the State wrongfully filed charges against him without sufficient probable cause. He cites RPC 3.8(a), which demands that a prosecutor "refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." Alvarez maintains that the trial court recognized that an erroneous probable cause statement was filed against him.

Alberto Alvarez did not object on probable cause grounds before the trial court, probably since no error occurred. At the beginning of trial, the superior court acknowledged that the clerk's file included an erroneous probable cause affidavit. Nevertheless, defense counsel recognized he possessed a correct probable cause affidavit. The State then filed the correct affidavit. Alvarez suffered no prejudice by the filing error.

Removal of Prosecutor

Alberto Alvarez contends that the trial court erred by not removing the prosecutor, Brooke Wright, from this prosecution because of Alvarez's pending § 1983 lawsuit against her. Alvarez further contends that the outcome of the prosecution against him greatly impacted the lawsuit against Wright. Our record lacks any motion Alberto Alvarez filed demanding Brooke Wright's removal from the case. Alvarez also fails to explain how the outcome of this case impacted the suit against Wright.

This court will not review claims brought on direct appeal when the claims involve matters outside of the trial court. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Accordingly, we refuse to address the merits of this argument.

Due Process Violations

Alberto Alvarez asserts three due process violations. First, he maintains that, because the State filed its second amended information on the day that his trial began, he was faced with the choice of either going forward with the trial unprepared or waiving his right to a speedy trial in order to prepare his defense. Second, Alvarez contends that the State violated his right to a fair trial by failing to secure a material witness, Ivan Han, thus eliminating his opportunity to cross-examine Han. He claims that, if he could have examined Han, the narrative of the trial would have changed. Third, Alvarez contends that the State erred by charging him with disclosing intimate images when the trial court later ruled it had no jurisdiction over that charge. He argues that, although the court dismissed this charge, he was prejudiced from the jury's knowledge of the charge.

The State first filed charges against Alberto Alvarez on November 28, 2016. The State amended its information on December 5, 2016. Finally, on January 29, 2020, the State filed its second amended information. The only determinable alteration made to the first amended information is the replacement of the word "photographs" with the word "money" to the count of second degree extortion. CP at 37. The modified language

reads that Alvarez "obtained or attempted to obtain property or services, *money*, from [Esther]." CP at 37 (emphasis added).

Defense counsel objected to the State's late amendment to the information. The trial court concluded that the late filing did not prejudice Alberto Alvarez since the amendment to the information jibed with the probable cause statement. Nonetheless, the cautious court offered defense counsel the opportunity to request a continuance to give him time to prepare. Defense counsel responded that Alvarez felt adamant about proceeding to trial that day.

Alberto Alvarez could have requested a continuance to allow himself time to prepare in light of the late amendment to the information assuming such was needed. He chose not to. The charging document did not mislead Alvarez. Alvarez identifies no prejudice suffered as a result of the late amendment.

Alberto Alvarez speculates that cross-examination of Ivan Han would have assisted his defense without explaining why. Alvarez could have subpoenaed Han as his own witness if he deemed Han's testimony critical. Because Han did not testify, this claim involves matters outside of the record. We refuse to otherwise address it. *State v. McFarland*, 127 Wn.2d 322, 335 (1995).

The trial court did not conclude it lacked jurisdiction over the charge of disclosing intimate images. The court questioned whether the State proved a jurisdictional element, but dismissed the charge due to insufficient evidence that Alberto Alvarez disclosed any

images to a third party. Because probable cause supported the charge, the State did not err by bringing the charge against Alvarez. Alvarez cites to no authority holding that prejudice results because the jury heard evidence supporting a dismissed charge.

Inadmissible Testimony

Alberto Alvarez argues that the State committed misconduct by knowingly eliciting inadmissible testimony from Esther about his prior domestic violence against her.

To prove prosecutorial misconduct, a defendant must show that "the prosecuting attorney's conduct was both improper and prejudicial." *State v. Weber*, 159 Wn.2d 252, 270, 149 P.3d 646 (2006). Such conduct is prejudicial when there is "'a substantial likelihood the misconduct affected the jury's verdict.'" *State v. Weber*, 159 Wn.2d at 270 (quoting *In re Personal Restraint of Pirtle*, 136 Wn.2d 467, 481-82, 965 P.2d 593 (1998). In analyzing this issue, an appellate court should review a prosecutor's actions "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given." *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).

During the State's direct examination of Esther, she began to relate events occurring before she and Alberto Alvarez ceased being intimate. Defense counsel immediately objected and moved to strike Esther's statement based on his previous motion in limine prohibiting discussion of Alvarez's prior bad acts. The trial court

10

granted defense counsel's objection and instructed the jury to disregard Esther's "last response." RP (Jan. 30, 2020) at 226.

Esther's testimony about earlier abuse was isolated and immediately objected to by defense counsel. The jury heard no details of any prior abuse. The trial court provided a curative instruction when the jury returned. Alvarez suffered no prejudice.

Inadmissible Electronic Messages

Alberto Alvarez contends that the trial court erred in admitting social media messages into evidence after previously ruling that the messages were inadmissible. Alvarez complains that the court admitted all 500 plus pages worth of messages.

Alberto Alvarez does not identify the exhibit numbers of the exhibits about which he complains. Exhibits 8, 9, 10, and 11 are printouts of Alvarez's and Esther's conversations. Defense counsel disliked the State's dividing portions of the messages and moved to publish the entirety of exhibits 8 through 11. Counsel also requested that the trial court direct the jury to read all messages. The trial court obliged.

Since defense counsel requested to admit the entirety of the electronic communications between Alberto Alvarez and Esther, we refuse to address Alvarez's assignment of error.

Access to Discovery

Alberto Alvarez asserts that the jury reviewed social media messages not introduced into evidence nor presented in open court. He proclaims a lack of knowledge of what documents the jury reviewed during deliberations.

Defense counsel had access to the 500+ pages of messages between Alberto Alvarez and Esther. When cross-examining Esther, defense counsel even handed the witness the exhibits. Alvarez cites to no authority requiring that all admitted exhibits be presented in open court. Additionally, the trial court directed the jury to read the messages at defense counsel's request.

Jury Misconduct

Alberto Alvarez maintains that venireman Kevin Page could have informed other jurors that he previously prosecuted defense counsel. Thus, according to Alvarez, he lacked an impartial jury.

During jury selection, defense counsel requested to exclude Kevin Page for cause, because Page previously prosecuted defense counsel for DUI. The trial court granted the request.

Alberto Alvarez may mistakenly believe that Kevin Page served on the jury. Moreover, defense counsel volunteered the information that Page previously prosecuted him for DUI. In the unlikely event that Page shared any details about the DUI to other

members of the jury pool, such facts remain outside the record. *State v. McFarland*, 127 Wn.2d 322, 335 (1995).

## Speedy Trial Violation

Alberto Alvarez argues that his right to a speedy trial was violated on multiple occasions. When asserting that he objected to continuances, he cites indexes in the trial record that do not appear in the appellate record. Because we cannot address this assignment of error without considering materials outside of the appellate record, we refuse to consider it. *State v. McFarland*, 127 Wn.2d at 335.

## Ineffective Assistance of Counsel

Alberto Alvarez contends that trial defense counsel five times provided ineffective assistance. First, counsel failed to request a continuance when the State moved to amend the complaint on the day of trial. Second, counsel failed to request suppression of Alvarez's prior bad acts of domestic violence against Esther. Third, counsel failed to seek a mistrial when the State elicited inadmissible testimony about his prior bad acts. Fourth, counsel failed to show Alvarez the State's discovery, discuss strategies, or explain what he should expect if he chose to take the stand. Fifth, counsel failed to overturn the jury's verdict based on the numerous errors at trial and the fact the jury could not reach a verdict after deliberating twice.

To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate "both (1) that defense counsel's representation was deficient and (2) that the

deficient representation prejudiced the defendant." *State v. Estes*, 193 Wn. App. 479, 488, 372 P.3d 163 (2016), *aff'd*, 188 Wn.2d 450, 395 P.3d 1045 (2017). Representation is deficient if, after considering all the circumstances, the performance falls below an objective standard of reasonableness. *State v. Estes*, 193 Wn. App. 479, 488 (2016). Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *State v. Estes*, 193 Wn. App. at 488. Criminal defendants may rebut the presumption of reasonable performance by demonstrating no conceivable legitimate tactic explaining counsel's performance. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Counsel's failure to move to suppress evidence on one ground can be undermined by some degree if counsel moved to suppress on another ground. *State v. Nichols*, 161 Wn.2d 1, 15, 162 P.3d 1122 (2007).

Even if defense counsel erred by not requesting a continuance to further prepare for trial, the trial court found no prejudice to the defense when the State sought to amend the information for the second time. Defense counsel decided not to request a continuance based on Alberto Alvarez's adamance. Alvarez identifies no additional preparation needed as a result of the amendment.

The trial court granted a motion in limine barring, at least, testimony of pending charges against Alberto Alvarez. Defense counsel urged the court that his motion excluded testimony relating to any of Alvarez's bad acts. Although the trial court preliminarily disagreed with defense counsel, it sustained his objection to Esther's

14

testimony about Alvarez's prior assault against her.  The record does not show the specificity of the motion in limine.  Nonetheless, the trial court gave defense counsel the benefit of the doubt.  Thus, even if the motion did not bar the challenged testimony, the court precluded the testimony anyway.

Assuming defense counsel should have moved for a mistrial when the State elicited testimony from Esther about Alberto Alvarez's prior acts of domestic violence, the trial court would likely not have granted the motion.  Defense counsel immediately objected to the inadmissible testimony.  On the jury's return, the trial court ordered Esther's last response be disregarded and struck from the record.

Alberto Alvarez fails to explain why his lack of familiarity with the State's discovery and defense counsel's strategy prejudiced him.  Moreover, the trial court asked Alvarez whether defense counsel had answered all of his questions about his right to testify and whether he understood this right.  Alvarez responded in the affirmative.

Finally, the jury's inability to reach a verdict actually benefitted Alberto Alvarez, as it led to a mistrial on the cyberstalking charge.

Prosecutorial Misconduct during Closing

During closing, the State's attorney remarked:

> Pictures were sent out in the context of that demand, "Give me more money."  And the—the threat was made explicit: "If you give me money I'll stop sending out the pictures.". . .
> . . . .
> But again, it's in the evidence.  *It's in the text messages*.

15

RP (Feb. 3, 2020) at 275 (emphasis added).  Alberto Alvarez asserts that these comments amounted to flagrant and ill-intentioned misconduct as nothing in the record supports the prosecutor's comments.

When a defendant fails to object to alleged prosecutorial misconduct, the defendant must demonstrate that the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice.  *In re Personal Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).  The absence of a motion for mistrial at the time of the argument strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial.  *State v. Swan*, 114 Wn.2d 613, 635, 790 P.2d 610 (1990).

Our record lacks the transcripts of the messages between Alberto Alvarez and Esther.  So we cannot confirm the validity of Alvarez's argument.

Incorrect Jury Instructions

Alberto Alvarez maintains that the jury could not reach a verdict on the charges against him due to the trial court's inability to properly instruct them.  Alvarez fails to identify the purported mistaken instructions.  The jury's inability to reach a verdict on cyberstalking served as a victory for Alvarez.

Prosecutor's Meeting with Esther

Alberto Alvarez argues that the prosecutor committed misconduct by meeting alone with the alleged victim, Esther. He contends that Wright met with Esther to induce her to commit perjury. Alvarez attaches, as an appendix, a printout of a scheduled appointment between Wright and Esther set for January 17, 2020.

This court will not review claims brought on direct appeal when the claims involve matters outside of the trial court. *State v. McFarland*, 127 Wn.2d 322, 335 (1995). Because the document on which Alberto Alvarez relies is not included in the record, it lies outside this court's purview. Even if this court chose to review the document, the printout only demonstrates that Brooke Wright planned to meet Esther, not that a meeting took place.

Alberto Alvarez fails to cite authority prohibiting a prosecuting attorney from meeting with an alleged victim one-on-one. He relies on *State v. Schmitt*, 124 Wn. App. 662, 102 P.3d 856 (2004), without explaining the case's relevance. In *Schmitt*, the trial court ordered disqualification of a deputy prosecuting attorney pursuant to RPC 3.7, deeming the prosecuting attorney a necessary witness for trial.

Erroneous No-Contact Order

Alberto Alvarez asserts that the trial court erred when entering a no-contact order on December 5, 2016, because the affidavit of probable cause supporting the order was falsified and had no bearing on the charges against him. Alvarez does not state what

relief he seeks from this court for this alleged error. The record bears no mention of a no-contact order. *State v. McFarland*, 127 Wn.2d 322, 335 (1995).

### Esther's Authentication of the Social Media Messages

Alberto Alvarez cites a January 30, 2021 trial brief, arguing that the brief indicates Esther would testify as to her knowledge of the social media messages containing evidence of Alvarez's alleged extortion. He maintains the brief does not read that Esther would initial each page of the printouts of the messages as the State directed her to do in open court.

Our record does not contain the trial brief. *State v. McFarland*, 127 Wn.2d at 335. By January 30, 2021, nearly one year had elapsed since Alvarez's trial concluded. Perhaps Alvarez's SAG contains a scrivener's error, and he meant to write January 30, 2020. Even if the record contained the brief, Alvarez fails to explain why the document's lack of language directing Esther to initial each of the pages of social media messages between her and Alvarez created a problem. Presumably, Alvarez is challenging the authenticity of the message printouts. If so, Alvarez waived this contention when his counsel moved the trial court to publish the entirety of the social media messages, which request the court granted.

### Inadmissible Social Media Messages

Alberto Alvarez again cites to the supposed January 30, 2021 trial brief, highlighting the State's intention to "'admit all'" of the social media messages.

Supplemental SAG at 2. Because not *every* social media message exhibit was entered into evidence, Alvarez argues that *none* of the message exhibits should have been admitted.

Not only is the trial brief outside of the record, but Alberto Alvarez provides no support for his illogical argument. *State v. McFarland*, 127 Wn.2d 322, 335 (1995). One exhibit's inadmissibility does not affect another exhibit's admissibility.

Alberto Alvarez also argues that the social media exhibits should have been ruled inadmissible, because the State redacted the photos of Esther when the exhibits were published, in violation of the trial court's ruling that they not be redacted. The social media exhibits at issue are not in the record. *State v. McFarland*, 127 Wn.2d at 335. The record does not confirm Alberto Alvarez's claim that the published version of the social media exhibits contained redacted photos of Esther.

Excluded Witnesses

Alberto Alvarez contends that the trial court should have barred Detective Mark Williams' testimony, because Williams testified about the social media messages between Alvarez and Esther before the messages were admitted into evidence. While Williams mentioned the social media messages before their introduction into evidence, Alvarez did not object to the testimony then, nor does he now cite authority explaining why Williams' testimony was inadmissible.

Motion in Limine Violation

Alberto Alvarez asserts that the trial court should have excluded both Detective Mark Williams' and Esther's testimony because defense counsel's first motion in limine, agreed to by both parties, governed the "'[e]xclusion of witnesses.'" Supplemental SAG at 3. Alvarez suggests that, since the motion in limine did not specify which witnesses were to be excluded, the court should have barred all witnesses.

Literalist Alberto Alvarez supplies no support for his argument. We refuse to address this claim because of its silly nature, because of his failure to object before the trial court, and because our record does not include the motion in limine. *State v. McFarland*, 127 Wn.2d 322, 335 (1995).

Esther's Perjury

Alberto Alvarez maintains that Esther committed perjury when averring that his motivation for extorting her was retaliation for her brother's smashing Alvarez's car windows. Esther only testified once about windows: when she read, in open court, a message she received from Alvarez, stating:

"Said the bitch *breaking windows*."

RP (Jan. 31, 2020) at 54 (emphasis added). We cannot conclude that Esther prevaricated during her testimony because she did not offer the statement as the truth of the matter. She simply read a statement written by Alvarez.

Subornation of Perjury

Alberto Alvarez argues that prosecutor Brooke Wright induced Esther to lie during

her testimony.  Alvarez explains that, at the time of trial, Alvarez filed lawsuits against

both Brooke and Esther.  Thus, they had a motive to collude with one another to ensure

Alvarez's conviction.  Alvarez cites to nowhere in the record that demonstrates any

perjury or prosecutorial misconduct arising from inducing perjury.

*Brady* Violation

Alberto Alvarez contends that the State, in violation of *Brady v. Maryland*, 373

U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), failed to provide him with crucial,

exculpatory evidence.  He lists the following documents as withheld:

> 1.  Coban of Police interaction with alleged victim on 11-18-2016 resulting in charges being filed.
> 2.  Smith affidavit of alleged victim[.]
> 3.  Detective follow-up report of Detective Dulce Diaz
> 4.  Sanction information of Dectective [sic] Dulce Diaz resulting in being stripped of Detective status and now a patrol officer.
> 5.  Payment receipt, incentives, threats, and/or promises made by the state to the alleged victim for testifying.

Supplemental SAG at 5.

Under due process principles, the State must disclose evidence favorable to the

accused and material to the accused's guilt or punishment.  *State v. Mullen*, 171 Wn.2d

881, 894, 259 P.3d 158 (2011).  Evidence is material if there is a reasonable probability

that, if it had been disclosed to the defendant, the proceeding result would have been

21

different.  *State v. Mullen*, 171 Wn.2d 881, 894 (2011).  To demonstrate a *Brady* violation, the defendant must establish that the suppression of the evidence prejudiced the defendant.  *State v. Mullen*, 171 Wn.2d at 895.

Alberto Alvarez fails to establish a *Brady* violation.  He does not explain why the listed documents would have altered the outcome of the trial.  He also does not argue that the State, whether purposely or not, withheld the evidence.  Alvarez fails to demonstrate prejudice as a result of any alleged suppression of evidence.

### Prosecutor's Relationship with a Juror

Alberto Alvarez asserts that Brooke Wright personally knew juror 10, the foreperson, and that she connived to place this person on the jury.  He provides no citation to the record to support this claim.

### Erroneous Sentencing Memorandum

Finally, Alberto Alvarez maintains that the State committed prosecutorial misconduct during sentencing by including a police report from a different jurisdiction in its sentencing memorandum.  In the memorandum, the State indicated that "'Alvarez was convicted in 2016 of disseminating intimate photographs.'"  Supplemental SAG at 6.  He emphasizes that the prosecuting authority dismissed the charge.

Our record does not contain the sentencing memorandum.  *State v. McFarland*, 127 Wn.2d 322, 335 (1995).  Therefore, we decline to address this alleged error.

CONCLUSION

We grant Alberto Alvarez's one request on appeal to direct the superior court to vacate his obligation to pay for community custody supervision fees. The trial court may strike the obligation without Alvarez's presence at a hearing. We reject all of Alvarez's statement of additional grounds.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.