IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

In the Matter of Personal Restraint of    )
                                          )    No. 37732-6-III
JONATHAN BROOK HAWKINS.                   )
                                          )
                                          )    UNPUBLISHED OPINION
                                          )
                                          )

FEARING, J. — Jonathan Hawkins seeks relief from personal restraint resulting from his convictions for two counts of first degree child rape and one count of first degree child molestation. This court previously denied his appeal from his convictions. In his personal restraint petition (PRP), Hawkins contends that his trial counsel performed ineffectively, the State engaged in misconduct, and the superior court denied him his constitutional right to a grand jury indictment. We deny Hawkins relief.

FACTS

This prosecution arises from sexual contact between Jonathan Hawkins and two of his three young daughters. Hawkins obtained a college degree in agricultural business and science.

In early February 2015, Hawkins and his wife, Caitlyn, resided in a Moses Lake hotel room with their three children: four-year-old Leah, one-and-a-half-year-old Carol,

and six-month-old Linda. All children's names are pseudonyms. Caitlyn is the

biological mother to all three girls. Jonathan is the biological father to Carol and Linda

and the stepfather to Leah. All minors' names are pseudonyms.

On February 10, 2015, in a Facebook conversation with a family friend, Jonathan

Hawkins described his family's "'open'" lifestyle and promulgated his belief that

"females existed to provide sexual service to males and that his one-and-a-half- and four-

year-old daughters assisted their mother in sexual activities with him." *State v. Hawkins*,

No. 34898-9-III, slip op. at 1-2 (Wash. Ct. App. Apr. 23, 2019). Following this

conversation, the family friend reported Hawkins to Child Protective Services (CPS)

regarding potential sexual assaults of Leah. *State v. Hawkins*, No. 34898-9-III, slip op. at

2.

On February 11, 2015, Sergeant Brian Jones of the Moses Lake Police Department

began investigating the allegation CPS received. In an affidavit for a search warrant of

the hotel room in which the Hawkins family resided, Sergeant Jones referenced the

Facebook conversation between Jonathan Hawkins and the family friend. Hawkins had

written in the electronic conversation:

> [Leah] was "learning by example" from watching her mother and
> father engage in sexual activities, including "how to pleasure the sack and
> prostate." The affidavit also included admissions by both the mother and
> the father that the four-year-old had been in contact sexually with the father
> and had assisted in "milking" him. [Clerk's Papers (CP)] at 263. The
> "milking" process was described in a Facebook message included in the
> affidavit as the regular "release" of "sperm and what we call milk." CP at

2

> 265. Mr. Hawkins described the released material as "very healthy for the female to eat" and "should be the majority of the females [sic] diet." CP at 265.

*State v. Hawkins*, No. 34898-9-III, slip op. at 21. The trial court granted Sergeant Jones a search warrant for the hotel room.

On the evening of February 11, 2015, law enforcement contacted Jonathan Hawkins outside of his hotel room by duping him into believing someone vandalized his vehicle. Officers then entered the hotel room with Caitlyn Hawkins' consent and executed the search warrant.

During the search of the hotel room, Moses Lake Detective Kao Vang interviewed Caitlyn. Caitlyn explained to Detective Vang that her family was "open" in regard to general communication and their bodies. The Hawkins family spent a majority of their time at home nude. According to Caitlyn, Jonathan's ideology about and practices toward females came from his research of the first bible written in Greek or Hebrew. In Jonathan's view, God created females in his image only to give pleasure to men and not to enjoy sex themselves.

Detective Kao Vang asked Caitlyn Hawkins whether Leah had touched her or Jonathan Hawkins in a sexual manner. Caitlyn responded that Leah had touched Caitlyn's vagina and Jonathan's penis. Leah also had Jonathan's penis in her mouth. Caitlyn described a time when Leah manually masturbated Jonathan and another time in which Leah drank Jonathan's sperm, referred to by Caitlyn as "'milk,'" which had been

3

stored in the refrigerator. Clerk's Papers (CP) at 14. (The record from *State v. Hawkins*, No. 34898-9-III was transferred into No. 37732-6-III.) At the conclusion of the interview, officers arrested Caitlyn.

Detective Kao Vang then interviewed Jonathan Hawkins at the Moses Lake Police Department. Hawkins admitted to Detective Vang that, on one occasion, Leah's mouth touched his penis. He explained that, while Caitlyn fellated him, Leah awoke. He claimed to not recall how Leah's mouth came to touch his penis. According to Jonathan, Leah evoked curiosity about how "milk" tasted. So, the couple let Leah drink sperm. She did not like it. Jonathan emphasized that drinking sperm carried health benefits, including preventing prostate cancer. Jonathan denied having vaginal intercourse with Leah.

PROCEDURE

On February 13, 2015, the State of Washington charged Jonathan Hawkins with one count each of rape of a child in the first degree and child molestation in the first degree. The State alleged four-year-old Leah as the victim on both counts.

The State of Washington filed charges separately against Caitlyn Hawkins. *State v. Hawkins*, No. 34898-9-III, slip op. at 2. CPS initiated dependency proceedings for the couple's children. *State v. Hawkins*, No. 34898-9-III, slip op. at 2.

Trial was initially scheduled for April 15, 2015. While citing a trip out of town from April 2-10 and the need to interview eleven State witnesses, defense counsel

obtained, over the objection of the prosecution, a continuance of the trial until June 3, 2015. Defense counsel also requested that the State schedule a *Ryan* hearing in advance of trial. A Ryan hearing addresses the admissibility of a child's statements. *State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984). Defense counsel sought a delay in the hearing in order to obtain a defense expert prior to the hearing.

The prosecution tendered a plea offer to Jonathan Hawkins that would expire on a *Ryan* hearing. Thereafter, the trial court continued the *Ryan* hearing and the trial on many occasions at the request of both sides. The dependency proceeding resulted in Leah and her sisters being placed out of state, a circumstance that impeded access to Leah.

The prosecution reached an agreement with Caitlyn Hawkins to testify against her husband. As part of a "free talk" with the detectives, she showed them a lengthy Facebook conversation with her husband that stretched over a year. The messages included photographs and videos of sexual activities involving the family. Caitlyn allowed access to her Facebook pages in order to permit the officers to view the entire conversation. Law enforcement could not download the conversation due to its size. As a result, police served a search warrant on Facebook to obtain the entire conversation.

The agreement with Caitlyn Hawkins faltered when the prosecution concluded that she prevaricated. The State withdrew from the agreement and sealed the evidence obtained from her. When Facebook later complied with the search warrant by providing

nearly 2,000 printed pages, the prosecution also sealed the pages and declined to immediately submit copies to Jonathan Hawkins.

On January 15, 2016, one of the dates scheduled for the *Ryan* hearing, Jonathan Hawkins moved to dismiss under CrR 8.3(b) due to alleged government mismanagement involving the late disclosure of the video recording of a second forensic interview of Leah in November 2015. The superior court denied the motion on the ground that Hawkins suffered no substantial prejudice. The superior court continued the *Ryan* hearing for one month. Shortly before the *Ryan* hearing, the prosecution entered into a plea agreement with Caitlyn Hawkins and forwarded copies of the 2,000 Facebook pages to Jonathan Hawkins.

The *Ryan* hearing began February 25, 2016, six days before the scheduled trial date. The superior court heard testimony from the children's foster mother, the original child interviewer, Karen Winston, and a defense witness who had conducted an interview with Leah in November 2015. The court also viewed the videotaped interview conducted by Winston, but did not hear testimony from Leah. The court ruled that Winston and the foster mother could testify to statements uttered by Leah. The superior court reserved a ruling on Leah's competency to testify until trial.

Because of the late delivery of the Facebook pages, the superior court continued the trial into the summer of 2016. Jonathan Hawkins filed motions to exclude testimony from Caitlyn, to suppress the Facebook electronic conversations, and to change venue.

The superior court granted the State permission to amend the information to add a count of first degree child rape of the one-and-a-half-year-old girl, Carol.

The superior court denied the motion to exclude testimony from Caitlyn Hawkins and to suppress the Facebook pages. Jonathan Hawkins filed a waiver of jury trial on August 22, 2016. He avers that his trial counsel then explained that a judge decides a case based on the law, whereas a jury decides cases on an emotional basis, unbound by law.

The prosecution proceeded to a bench trial on September 14, 2016. The State presented testimony from two law enforcement officers, Karen Winston, the foster mother, Caitlyn Hawkins, and Leah. The superior court found Leah competent to testify and admitted the forensic interview tape by stipulation of the parties.

During her testimony, Caitlyn Hawkins described the family's "open" lifestyle and testified to instances of sexual contact she observed between Leah and her husband. The State offered fifty pages of excerpts from the Facebook conversation as exhibits. The superior court conducted an ER 404(b) analysis on the record and admitted the excerpts as exhibits because of their high probative value.

Caitlyn Hawkins testified to seeing Jonathan's penis inside Leah's mouth on three occasions, one of which occurred on January 29 or 30, 2015. Caitlyn knew the sexual contact occurred around 7:30 p.m., because *Austin & Alley*, a television show, aired at the

7

time. Caitlyn also stated that Leah often watched and assisted in "milking" Jonathan by massaging his testicles.

During his cross-examination of Caitlyn Hawkins, Jonathan Hawkins' counsel questioned her about a competency evaluation she had undergone. The State objected to the line of questioning on relevance grounds. Defense counsel explained that, in Caitlyn's evaluation report, "the doctor made several diagnoses, including that she was malingering." Report of Proceedings (RP) at 751. The superior court sustained the objection.

During trial, the State admitted as exhibits Facebook messages between Caitlyn and Jonathan Hawkins. In one message, Jonathan discussed the need "'to break [Leah's] hymen and start working her vaginally and things' and using a butt plug." CP at 451. In another message, Jonathan remarked that Leah "'did good massaging the balls it [sic] helped me go.'" CP at 451. Jonathan described Leah's ability to "milk" him as improving.

At trial, Leah's foster mother testified to a disclosure Leah made to her relating to a rape perpetrated by Jonathan Hawkins and her maternal grandfather on the grandfather's Oregon property. According to Hill, Leah remarked:

> Sometimes we went to visit nanny and poppy and we used to go to the barn and poppy and dad put them [sic] penis in there too. There was [sic] no animals in the barn, only a cute cat and a chair and just a bed.

RP at 821. According to Hill, Leah disclosed that "'white stuff came out of'" Hawkins and was placed in her food. CP at 451.

Detective Kao Vang testified that he determined that Caitlyn Hawkins' parents' property did not feature a barn, only a shed. When Caitlyn testified, she confirmed that her parents did not own a barn, but rather a shed and a garage with a lean-to.

Karen Winston testified that Leah told her that Jonathan Hawkins' penis had been in her mouth and that Leah explained the concept of producing "milk." Leah also informed Winston that she saw Hawkins' penis in Carol's mouth while they stayed in a hotel. Leah uttered this latter comment without prompting from Winston and described how Carol spat Hawkins' penis out of her mouth.

The superior court found Jonathan Hawkins guilty on all three counts relating to Leah and Carol. *State v. Hawkins*, No. 34898-9-III, slip op. at 6. The court also found two alleged aggravating factors, vulnerability of the victims and a pattern of sexual abuse, as to all counts. *State v. Hawkins*, No. 34898-9-III, slip op. at 6.

In its written verdict, the superior court outlined its reasoning for finding Jonathan Hawkins guilty. The court deemed Caitlyn Hawkins' testimony reliable because she identified specific details relating to Jonathan's sexual conduct with Leah. The superior court found probative Leah's statements to Karen Winston and the foster mother. According to the court, the Facebook conversation between Jonathan and Caitlyn Hawkins provided insight into Jonathan's philosophy about females. In finding Jonathan

9

Hawkins guilty of raping Carol, the superior court relied on Leah's statements to Karen

Winston that she saw Hawkins' penis in Carol's mouth while they stayed in a hotel.

The superior court conducted a sentencing hearing on November 22, 2016. The

court imposed high end minimum term sentences consisting of 216 months on the two

rape convictions and 130 months on the molestation conviction. Although the court

ordered the two rape sentences to run concurrently with each other, the court imposed an

exceptional sentence by directing that the molestation sentence be served consecutively

to the rape convictions. Thus, the superior court effectively sentenced Jonathan

Hawkins' to a total of 346 months' confinement.

Jonathan Hawkins appealed to this court. He argued, among other contentions,

that the State committed governmental mismanagement by violating his right to a speedy

trial. *State v. Hawkins*, No. 34898-9-III, slip op. at 6-7. This court analyzed the alleged

speedy trial violation as follows:

> Mr. Hawkins . . . argues that his constitutional speedy trial right was
> violated by the numerous continuances beginning in July 2015, some of
> which resulted due to discovery provided during the on-going investigation.
> He summarily argues that all of the *Barker v. Wingo*[, 407 U.S. 514, 92 S.
> Ct. 2182, 33 L. Ed. 2d 101 (1972)] factors favor Mr. Hawkins and compel
> dismissal of the charges. However, those factors do not support his
> position.
> The time between charging and trial was nearly 19 months, a length
> of time sufficient to raise constitutional speedy trial concerns. [State v.
> ]*Iniguez*, 167 Wn.2d [273,] 283-284[,217 P.3d 768 (2009)]. This factor
> does favor Mr. Hawkins. The second factor is the reason for the delay; the
> analysis depends on whether the delay was purposeful or negligent and who
> was responsible for it. *Id*. at 284. Except for a three week continuance

10

granted over Mr. Hawkins' objection on July 6, 2015, the remaining continuances were granted at the request of Mr. Hawkins or with his agreement. In light of this, Mr. Hawkins presents his argument here as part of his mismanagement claim—that the failure to set the *Ryan* hearing and the subsequent plea deal with the co-defendant (and resulting discovery) compelled him to choose delay. These arguments are, at best, a mixed bag. There was no reason to have an early *Ryan* hearing except for Mr. Hawkins' request; the hearing could easily have been held at the beginning of trial as is customary in most jurisdictions. The fact that the State erred in not obtaining an earlier hearing impacted Mr. Hawkins' strategic decision to have an early *Ryan* hearing, but it did not itself delay the trial. Similarly, the fact that Mrs. Hawkins became a witness against Mr. Hawkins—and thereby a source for voluminous new discovery—was not a product of government mismanagement. In the same vein, subsequent questions about her truthfulness and competency to stand trial led to changes in the State's approach to Mr. Hawkins' case, but did not impact the timeliness of his trial since the two cases were not joined. We conclude that the second *Barker* factor does not weigh against the State. *Id*. at 294.

The third factor is whether Mr. Hawkins asserted his speedy trial right. *Id*. at 284. Although Mr. Hawkins objected on one occasion, leading to a three week continuance, he promptly obtained a continuance of the new date and was either responsible for, or in agreement with, more than 12 months of subsequent trial continuances. His sole motion to dismiss was predicated on the timeliness of the disclosure of the second child interview, not on the timeliness of his trial date. This factor, too, does not weigh against the State.

The final factor is the prejudice to the defendant resulting from the delay. *Id*. at 284-285, 295. This factor is designed to address the concerns resulting from a delayed trial—incarceration, anxiety to the defendant, and possible impairment of the defense. *Id*. Mr. Hawkins does not cite any of these factors in his argument; his sole argument is that the delay helped the State improve its case to his detriment. This does not establish the relevant prejudice. This factor, too, does not weigh against the State.

The constitutional speedy trial claim fails. Although the lengthy delay was sufficient to trigger an inquiry, none of the *Barker* factors suggest that Mr. Hawkins was deprived of a fair trial. Delay is a common defense tactic in complex litigation. This was a complex case and the defense needed time to prepare in order to either accept the plea offer (which expired once a *Ryan* hearing was held), reach some other deal,

obtain a dismissal of charges, or defend at trial. As in most cases with child victims of tender years, delaying trial runs the risk that a child will become a more competent witness or disclose more abuse, but has the benefit that the child (as here) may forget what happened or provide inconsistent information. The presence of a co-defendant makes the calculation even harder. On one hand, each defendant may have an incentive to turn against the other, but a united front can also bolster a joint defense where neither side helps the State. When an issue arises that is unique to one defendant, such as a competency concern, those problems and opportunities redouble. Throughout this litigation, the defense filed numerous motions, many of which could have changed the course of the case.

This case had all of those features and more. The calculus facing the defense was complex and necessarily needed time to weigh. The delay in reaching trial in this case resulted from the complex issues presented and the tactical choices made by the defense, including the numerous motions that needed litigating. It was not an oppressive delay that prejudiced Mr. Hawkins.

The delay between charging and trial was not the result of governmental mismanagement and did not constitute a violation of his speedy trial right under the constitution.

*State v. Hawkins*, No. 34898-9-III, slip op. at 10-14. This court affirmed Jonathan

Hawkins' convictions and sentence. *State v. Hawkins*, No. 34898-9-III, slip op. at 33.


LAW AND ANALYSIS

In his personal restraint petition, Jonathan Hawkins contends his trial counsel

performed deficiently when providing information and advice regarding waiver of a jury

trial and when failing to object to shackling,

Personal Restraint Petition Prerequisites and Standards for Review

Jonathan Hawkins meets the conditions for reviewing his personal restraint petition on the merits. Hawkins currently serves a 346-month sentence and is thus "restrained" pursuant to RAP 16.4(b). The State does not dispute that Hawkins' petition satisfies the prerequisites for review.

To obtain relief in a personal restrain petition, a petitioner must show actual and substantial prejudice resulting from alleged constitutional errors or, for alleged nonconstitutional errors, a fundamental defect that inherently results in a complete miscarriage of justice. *In re Personal Restraint of Harvey*, 3 Wn. App. 2d 204, 215, 415 P.3d 253 (2018). Ineffective assistance of counsel constitutes constitutional error. *In re Personal Restraint of Harvey*, 3 Wn. App. 2d 204, 215 (2018). When a petitioner demonstrates ineffective assistance of counsel, the demonstration of the prejudice required for that claim satisfies the actual and substantial prejudice required for collateral relief. *In re Personal Restraint of Harvey*, 3 Wn. App. 2d at 215.

To avoid dismissal, a personal restraint petition must be supported by competent evidence. *In re Personal Restraint of Khan*, 184 Wn.2d 679, 686-87, 363 P.3d 577 (2015). The petitioner must present evidence showing his factual allegations to be based on more than speculation, conjecture, or inadmissible hearsay. *In re Personal Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). If the facts alleged would potentially entitle the petitioner to relief, a superior court reference hearing may be ordered to resolve factual issues. *In re Personal Restraint of Rice*, 188 Wn.2d at 886-87.

13

Failure to Assign Error

Jonathan Hawkins fails to assign error to any trial court decision, act of his trial counsel, or act of the prosecutor. RAP 16.10 governs briefs in PRP proceedings. It reads, in relevant part:

> (d) Content, Format, and Length, and Style of Briefs. The content, format, and length of briefs is governed by rules 10.3, 10.4, and 18.17.

(Boldface omitted.) RAP 10.3 governs what content briefs submitted to this court must contain. It provides, in relevant part:

> (a) Brief of Appellant or Petitioner. The brief of the appellant or petitioner should contain under appropriate headings and in the order here indicated:
> . . . .
> (4) *Assignments of Error*. A separate concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error.

(Boldface omitted.)

Despite the failure to assign error, this court should review the merits of Jonathan Hawkins' PRP because his briefs disclose the nature and specificity of his challenges. *State v. Clark*, 53 Wn. App. 120, 123, 765 P.2d 916 (1988). Hawkins' failure to assign error does not hinder our review. *State v. Clark*, 53 Wn. App. at 123.

Waiver of Jury Trial

Jonathan Hawkins argues that defense counsel assisted ineffectively by providing insufficient or misleading information regarding Hawkins' choice of whether to waive his

right to a jury trial. In a declaration filed with his petition, Hawkins states that defense counsel did not advise him that: (1) the jury would be provided and bound by jury instructions, (2) jury unanimity is required for a conviction, (3) a lack of jury unanimity would result in a mistrial, (4) the jury would decide on aggravating circumstances alleged by the State, and (5) more appealable issues would arise if a jury, rather than a judge, found him guilty. Hawkins elaborates that, before this prosecution, he lived in Oregon where the law did not require jury unanimity before 2020. Hawkins claims that counsel explained that a judge decides a case based on the law, whereas a jury decides cases on an emotional basis, unbound by law. He contends that he would not have waived a jury trial if defense counsel had provided him competent advice. Hawkins does not challenge the jury waiver colloquy with the trial court.

The State responds that defense counsel's performance was not deficient because an attorney could reasonably conclude that a judge is less likely to be swayed by emotion than a jury. The State further argues that Hawkins does not demonstrate prejudice resulting from defense counsel's advice.

This court may consider a new ground for ineffective assistance of counsel for the first time in on collateral review. *In re Personal Restraint of Khan*, 184 Wn.2d 679, 689 (2015). To prevail on an ineffective assistance of counsel claim, the petitioner must demonstrate that defense counsel's representation was deficient and the deficient representation prejudiced him. *State v. Estes*, 193 Wn. App. 479, 488, 372 P.3d 163

15

(2016), *aff'd* 188 Wn.2d 450, 395 P.3d 1045 (2019). Representation is deficient if after considering all the circumstances, the performance falls below an objective standard of reasonableness. *State v. Estes*, 193 Wn. App. 479, 488 (2016). Criminal defendants may "rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Prejudice exists when a reasonable probability exists that, except for counsel's errors, the result of the proceeding would have differed. *State v. Estes*, 193 Wn. App. at 488.

While defense counsel possesses wide latitude over matters of trial strategy, certain decisions are of such moment that ultimate decision-making authority must reside with the defendant. *State v. Humphries*, 181 Wn.2d 708, 725, 336 P.3d 1121 (2014). These decisions include choices crucial to the accused's fate. *State v. Humphries*, 181 Wn.2d 708, 725 (2014). Such decisions extend to whether to waive the right to a jury trial. *State v. Humphries*, 181 Wn.2d at 725. A defendant's waiver of a jury trial is valid if he or she waives it knowingly, intelligently, voluntarily, and free from improper influences. *State v. Pierce*, 134 Wn. App. 763, 771, 142 P.3d 610 (2006). Defense counsel may compromise a waiver of constitutional rights by dispensing inaccurate or misleading information or by failing to provide needed information. *In re Personal Restraint of Amos*, 1 Wn. App. 2d 578, 593, 406 P.3d 707 (2017).

Jonathan Hawkins relies on *In re Personal Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 351 P.3d 138 (2015), in which one of the petitioners, Muhammadou Jagana, argued that defense counsel failed to ascertain his immigration status and provided him with no guidance as to the immigration consequences that could arise from entering a guilty plea. Jagana maintained that defense counsel's failures rendered his plea involuntary. The Washington Supreme Court held that the allegations, if true, established that Jagana did not receive effective assistance of counsel in deciding whether to plead guilty. *In re Personal Restraint of Yung-Cheng Tsai*, 183 Wn.2d at 107.

Jonathan Hawkins also cites to *State v. Stowe*, 71 Wn. App. 182, 858 P.2d 267 (1993), in which Daniel Stowe told defense counsel that he did not want to accept the State's plea bargain, because he wished to continue his military career. For this reason, Stowe was willing to risk going to trial. Only when counsel led him to believe that an *Alford* plea would allow him to maintain his Army career did Stowe seriously consider the prosecutor's plea bargain. Thereafter, Stowe pled guilty. Defense counsel's advice regarding an *Alford* plea was incorrect. This court held that counsel's failure to research the issue before issuing this advice was unreasonable and prejudicial to Stowe.

Jonathan Hawkins analogizes defense counsel's conduct to that of defense counsel's actions in *Yung-Cheng Tsai* and *Stowe*. Hawkins asserts that he was not fully informed of his rights and given inaccurate advice.

17

Jonathan Hawkins' argument fails. We distinguish *In re Personal Restraint of Yung-Cheng Tsai* because defense counsel has a statutory duty to advise a defendant regarding immigration consequences. RCW 10.40.200. Hawkins cites to no duty derived from statute or case law requiring defense counsel to inform a defendant of any consequences resulting from a waiver of the right to a jury other than the fact that a judge will try the case. We also distinguish *State v. Stowe* because Hawkins has not demonstrated that defense counsel provided him incorrect advice. We question whether trial counsel would inform a client that a jury is not bound by the law, although jury nullification likely happens in Washington State. As the State highlights, Hawkins is college-educated and any belief that the jury would not consider the law would be unreasonable.

Jonathan Hawkins further argues that two ABA standards for defense attorneys demonstrate that defense counsel's performance was deficient. Pursuant to the ABA standards, counsel needed to provide a full consultation with "sufficiently detailed" advice for Hawkins to make an informed decision as to "whether to waive a jury trial." ABA, CRIMINAL JUSTICE STANDARDS FOR DEFENSE FUNCTION stds. 4-3.9, 4-5.2 (2017). ABA standards act as "guides to determining what is reasonable, but they are only guides." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The proper measure of attorney performance remains simply reasonableness under prevailing professional norms. *Strickland v. Washington*, 466 U.S. at 688.

ABA CRIMINAL JUSTICE STANDARD 4-5.2(b)(v) reads that "a competent client, after full consultation with defense counsel," ultimately decides "whether to waive jury trial." ABA CRIMINAL JUSTICE STANDARD 4-3.9 generally advises defense counsel to keep his or her client informed about the progress of the defendant's case. It provides, in relevant part:

> (a) Defense counsel should keep the client reasonably and currently informed about developments in and the progress of the lawyer's services, including developments in pretrial investigation, discovery, disposition negotiations, and preparing a defense. *Information should be sufficiently detailed so that the client can meaningfully participate in the representation.*

(Emphasis added.)

Neither ABA standard, on which Jonathan Hawkins relies, enumerate the details defense counsel must provide a client when advising him or her about the decision to waive a jury trial. ABA CRIMINAL JUSTICE STANDARD 15.1.2(b) provides some guidance for this personal restraint petition. The standard declares that a defendant's jury trial waiver should not be accepted unless the defendant personally waived the right "after being advised . . . of his or her right to trial by jury and the consequences of waiver of jury trial." The consequences of waiving a jury trial include that the case will be decided by a judge.

Jonathan Hawkins agrees that defense counsel advised him of his right to a trial by jury and the consequences of waiving that right: the case would proceed to a bench trial.

19

Because Hawkins has not established that counsel's advice was deficient, we reject this ineffective of assistance counsel claim.

Shackling

Jonathan Hawkins maintains that defense counsel provided ineffective assistance by failing to object to, or otherwise mention on the record, his unlawful shackling during some pretrial hearings and during sentencing. Hawkins relies on *State v. Jackson*, 195 Wn.2d 841, 852, 467 P.3d 97 (2020), in which our high court held that shackling a defendant during pretrial hearings, without an individualized determination of the need for shackles, violates the defendant's right to a fair trial. Hawkins does not challenge the trial court's failure to make a record of his shackling.

The State responds that Jonathan Hawkins was unshackled during trial and during many of the hearings before trial. The State argues that the Washington Supreme Court's decision in *State v. Jackson* constituted a radical change in the law that defense counsel could not have anticipated. For this reason, defense counsel did not err by not objecting to Hawkins' pretrial shackling.

The law is well settled that a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances. *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999) (plurality opinion). A defendant's constitutional right to a fair trial is also implicated by shackling and restraints at nonjury pretrial hearings. *State v. Jackson*, 195 Wn.2d 841, 852 (2020). When a defendant is

shackled at a pretrial hearing without the trial court's individualized inquiry into the need for the shackles, the court fails to exercise its discretion and commits constitutional error. *State v. Jackson*, 195 Wn.2d at 854.

In his declaration, Jonathan Hawkins avers that the State shackled him during all pretrial hearings from his arraignment on February 24, 2015 through October 6, 2015, at which time he posted bail. He also testifies the State shackled him during sentencing. The State does not dispute Hawkins' testimony. The State does not contend that the trial court engaged in an individualized inquiry as to the need for the shackles.

We disagree with the State's argument that *State v. Jackson* radically changed the law regarding shackling. In 2015, this court held that, "regardless of the nature of the court proceeding or whether a jury is present, it is particularly within the province of the trial court to determine whether and in what manner, shackles or other restraints should be used." *State v. Walker*, 185 Wn. App. 790, 797, 344 P.3d 227 (2015). Pursuant to *Walker*, trial courts were required to weigh the need for shackles on the record at each hearing, irrespective of the nature of the proceeding or whether a jury was present. *State v. Walker*, 185 Wn. App. at 797.

In *State v. Elmore*, 139 Wn.2d 250, 273, 985 P.2d 289 (1999), the Supreme Court also declared that trial courts must weigh on the record the reasons for restraining an accused in the courtroom. The court added that its admonition to trial courts did not relieve defense counsel of the obligation to object or request a curative instruction

21

regarding shackling. *State v. Elmore*, 139 Wn.2d at 273. The *Elmore* decision suggests that defense counsel's failure to object to shackling amounts to deficient performance.

In light of the controlling case law, even before *State v. Jackson*, 195 Wn.2d 841 (2020), defense counsel's failure to object to Jonathan Hawkins' pretrial shackling constituted deficient performance. We must then ask if the shackling prejudiced Hawkins.

Jonathan Hawkins argues that, in response to his personal restraint petition, the State must prove harmlessness beyond a reasonable doubt. We disagree since the procedural posture of this challenge comes in a collateral attack. After a conviction and exhaustion of appeal rights, the accused does not receive a presumption of prejudice which the state must overcome by evidence beyond a reasonable doubt. *In re Personal Restraint of Davis*, 152 Wn.2d 647, 698, 101 P.3d 1 (2004). In a personal restraint petition, we inquire whether the petitioner is able to show that, more likely than not, he was actually and substantially prejudiced. *In re Personal Restraint of Davis*, 152 Wn.2d 647, 699 (2004); *In re Personal Restraint of Mercer*, 108 Wn.2d 714, 720, 741 P.2d 559 (1987).

Jonathan Hawkins does not explain how defense counsel's failure to object to his pretrial and posttrial shackling influenced the outcome of his prosecution or sentencing. Overwhelming evidence supported Hawkins' guilt, including Leah's testimony of Hawkins' sexual conduct toward her and Hawkins' own words in the Facebook

conversation with his wife. The sentence fell within the standard range. Thus, we reject Hawkins' challenge of his shackling.

Jonathan Hawkins also asserts that appellate counsel provided ineffective assistance by failing to assign error to his unlawful shackling on appeal. He argues that appellate counsel could have discovered the facts of the shackling by asking trial counsel, any attorney who regularly practiced in Grant County, Hawkins, or Hawkins' family. He further argues that appellate counsel could have supplemented the record, under RAP 9.2, 9.10, and 9.11, to establish his shackling. The State responds that appellate counsel did not perform ineffectively because the record contains no mention of shackling and Hawkins fails to establish the predicate conditions for any supplemental evidence under RAP 9.11.

When a petitioner asserts an ineffective assistance of appellate counsel claim in a personal restraint petition, he must demonstrate that the legal issue counsel did not raise on direct appeal had merit and that he suffered substantial prejudice by counsel's failure to raise the issue. *In re Personal Restraint of Dalluge*, 152 Wn.2d 772, 777-78, 100 P.3d 279 (2004). If appellate counsel had raised the issue of Jonathan Hawkins' shackling on appeal, we would have asked whether the error subjected Hawkins to harmless error beyond a reasonable doubt standard. *State v. Clark*, 143 Wn.2d 731, 775, 24 P.3d 1006 (2001). Based on the overwhelming evidence against Jonathan, the State would have been able to overcome this burden. This evidence included: (1) Caitlyn Hawkins'

23

description of Jonathan's sex acts with Leah, (2) Leah's statements to Karen Winston and the foster mother about Jonathan's penis being inside her mouth and the "milk" that came from his penis, and Leah's comment that Jonathan's penis went inside Carol's mouth, (3) the extensive Facebook conversation between Jonathan and Caitlyn, in which conversation Jonathan explained his philosophy about females, the need to break Leah's hymen, and Leah's skill at massaging his testicles and "milking" him, and (4) Hawkins' message to his friend. Because of the overwhelming evidence supporting guilt, we hold that Hawkins fails to establish prejudice as a result of the shackling.

We observe that Jonathan Hawkins relies on a declaration in support of his personal restraint petition contention that his appellate counsel should have raised the shackling in his appeal. Nevertheless, on direct review, Hawkins lacked the entitlement to file declarations. As a result of a lack of trial record to show the shackling, appellate counsel did not perform deficiently by failing to raise the issue.

Prosecutorial Mismanagement and Delay

Jonathan Hawkins asserts that prosecutorial mismanagement resulted in his speedy trial right being violated. He argues that, had trial defense counsel provided effective assistance by consistently objecting to the State's mismanagement, his right to a speedy trial would have been preserved. The State responds that Hawkins may not recharacterize his speedy trial argument, which argument this court rejected on direct

24

appeal, as an issue of ineffective assistance of counsel on collateral attack. We agree with the State.

In a personal restraint petition, a petitioner may raise new points of fact and law involving errors of constitutional magnitude if he or she can demonstrate prejudice. *In re Personal Restraint of Davis*, 152 Wn.2d 647, 670-71 (2004). A petitioner is prohibited, however, from renewing an issue raised and rejected on direct appeal, unless the interests of justice require the issue be relitigated. *In re Personal Restraint of Davis*, 152 Wn.2d at 671. A defendant may not recast the same issue as an ineffective assistance claim. *In re Personal Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001). Recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previously rejected claim. *In re Personal Restraint of Stenson*, 142 Wn.2d 710, 720 (2001).

On direct appeal, Jonathan Hawkins argued that governmental mismanagement violated his right to a speedy trial. He may not now reword his argument by asserting that his trial counsel performed deficiently by failing to object to the mismanagement and to trial continuances.

False Evidence

Jonathan Hawkins contends that the State knowingly presented false evidence at trial by (1) introducing Leah's hearsay statement, through her foster parent, that Hawkins and his father-in-law sexually assaulted Leah in the grandfather's Oregon barn, because

no barn existed on the property, and by (2) offering Caitlyn Hawkins' testimony, despite knowing that she had previously changed her story and been dishonest. We disagree with factual assumptions contained in this assignment of error. Leah's story about an assault occurring in Oregon is not necessarily false because the grandfather's property did not include a barn. Leah could have been telling the truth about the assault without telling the truth about the presence of a barn. Leah could have mistaken the shed and lean-to for a barn. Also, Caitlyn Hawkins' changing of her story does not mean that the second story, to which she testified at trial, was false.

Jonathan Hawkins emphasizes Caitlyn Hawkins' competency evaluation report listed multiple diagnoses, including malingering. He asserts that the State knew that Caitlyn's testimony contained false statements. The competency evaluation report was not introduced at trial and only Jonathan's defense counsel claimed the report concluded Caitlyn malingered. We do not rely on facts not properly before this court.

A conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be vacated if there is any reasonable likelihood that the false testimony could have affected the judgment of the trier of fact. *In re Personal Restraint of Benn*, 134 Wn.2d 868, 936, 952 P.2d 116 (1998). Conflicting witness testimony does not demonstrate that the witness committed perjury or that the prosecutor knew of any alleged perjury. *In re Personal Restraint of Monschke*, 160 Wn. App. 479, 498, 251 P.3d 884 (2010). We do not overturn credibility determinations made by the trier of fact. *In*

26

*re Personal Restraint of Monschke*, 160 Wn. App. 479, 498 (2010); *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We conclude the State did not rely on known, false testimony.

### Grand Jury Indictment

Jonathan Hawkins argues that the State violated his Fifth Amendment to the United States Constitution right to be indicted by a grand jury when the State initiated the prosecution by an information. He maintains that the Fifth Amendment's indictment clause is applicable to the states either through the Fourteenth Amendment's due process clause or its privileges and immunities clause.

"No person shall be held to answer for a capital, or otherwise infamous crime, unless a presentment or indictment of a grand jury." U.S. CONST., amend. V. The Fifth Amendment's grand jury provision does not apply to state prosecutions. *Hurtado v. California*, 110 U.S. 516, 4 S. Ct. 111, 28 L. Ed. 232 (1884); *State v. Ng*, 104 Wn.2d 763, 774, 713 P.2d 63 (1985). A grand jury indictment is not required to ensure due process of law. *State v. Ng*, 104 Wn.2d 763, 774-75 (1985). Thus, we reject Hawkins' assignment of error.

### Allegations of Aggravating Factors

Finally, Jonathan Hawkins contends that the State breached his Sixth Amendment and Washington Constitution, article I, section 22 right to receive adequate notice of the essential elements of the charges against him because the State failed to list the alleged

27

aggravating circumstances in the charging document. The State responds the law does not require notice of any aggravating factors in the information. It further argues that Hawkins fails to establish, let alone assert, prejudice from the State's alleged failure.

The Sixth Amendment of the federal constitution and article I, section 22 of the Washington State Constitution require that a defendant receive adequate notice of the nature and cause of the accusation in order to allow him to prepare a defense in response to charges that he committed a crime. *State v. Siers*, 174 Wn.2d 269, 277, 274 P.3d 358 (2012). The Washington Supreme Court, in *State v. D.L.*, 197 Wn.2d 509, 484 P.3d 448 (2021) extended this rule of due process to aggravating factors. Adults have the right to notice of all aggravating factors before they begin trial or enter a plea. RCW 9.94A.537(1); *State v. D.L.*, 197 Wn.2d 509, 515 (2021). Pretrial notice of aggravating factors is protected by due process in adult criminal proceedings. *State v. Siers*, 174 Wn.2d 269, 278 (2012); *State v. M.S.*, 197 Wn.2d 453, 462-63, 484 P.3d 1231 (2021).

Aggravating factors are not the functional equivalent of essential elements. *State v. Siers*, 174 Wn.2d 269, 282 (2012). Thus, so long as a defendant receives constitutionally adequate notice of the essential elements of a charge before trial, the absence of an allegation of aggravating circumstances in the information does not violate the accused's rights under either the federal or state constitutions. *State v. Siers*, 174 Wn.2d at 276-77.

28

We agree that the State did not plead aggravating factors in the information. Nevertheless, Jonathan Hawkins does not contend that the State failed to give him notice of the assertion of the factors by other means. Regardless, Hawkins does not argue or show any prejudice resulting from lack of advance notice of aggravating factors.

CONCLUSION

We deny Jonathan Hawkins' personal restraint petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, A.C.J.

_____
Staab, J.