IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38793-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| VIKTOR MORGUNENKO, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Viktor Morgunenko appeals his convictions for violating a

protection order and assault. He seeks reversal of his convictions based on ineffective

assistance of counsel. He also asks us to vacate the portion of his sentence ordering a

mental health evaluation. Because of an undeveloped factual record, we reject

Morgunenko's appeal of his convictions. We, however, remand Morgunenko's sentence

for the sentencing court to assess whether Morgunenko qualifies for such an evaluation.

## FACTS

Defendant Viktor Morgunenko (Morgunenko), his father Nikoly Morgunenko

(Nikoly), and his brother Sergey Morgunenko reside together in a home in Stevens

County. Viktor Morgunenko's sister, Irina Tsibulko (Irina), lives on an adjacent parcel of

land owned by the father. Irina's husband, Alexei Tsibulko (Alexei) and the couple's two

daughters, Ranitta and Emma, live with Irina. Both families speak Russian.

The extended Morgunenko-Tsibulko family has a history of conflict between the Morgunenkos and Tsibulkos. This conflict caused Alexei Tsibulko to obtain an anti-harassment order against Viktor Morgunenko. The protection order listed Alexei and all of his children as protected persons, listed Morgunenko as the respondent, and ordered Morgunenko "to not contact, keep under surveillance, stay away from the [Tsibulko] residence, and school of the [Tsibulko] children." Clerk's Papers (CP) at 5.

On June 22, 2020, Alexei Tsibulko and daughter Ranitta exited their home and walked along a public access road to retrieve mail. To reach the mailbox, Alexei and Ranitta passed through or near Viktor Morgunenko's property. Alexei recorded with video a portion of the events that occurred on June 22, but some unrecorded particulars remained in dispute.

When Alexei and Ranitta Tsibulko neared Viktor Morgunenko's property, Morgunenko yelled obscenities at them. Alexei retreated to his house and called the police. When he returned outside, Morgunenko threw little rocks at Alexei's head. Morgunenko then released two aggressive dogs. The dogs bit Ranitta and Alexei multiple times. Ranitta yelled at Morgunenko to call his dogs off, but Morgunenko did nothing.

On June 27, 2020, Ranitta and Emma Tsibulko ran and bicycled on the public access road. After Ranitta and Emma passed Viktor Morgunenko's property,

2

Morgunenko entered his vehicle and followed them. As Morgunenko passed the two girls, he cursed at them and spat. The two became frightened.

Stevens County Sheriff's Deputy Cameron Craddock arrived on Viktor Morgunenko's property on June 27. Deputy Craddock intended to speak to Morgunenko about his violation of the protection order that day and to arrest him for the assaults he committed on June 22. An altercation between Morgunenko and Deputy Craddock ensued before Morgunenko was arrested.

## PROCEDURE

The process of this prosecution bears more importance to the appeal than the underlying facts. The State charged Viktor Morgunenko with two counts of violating an antiharassment order and three counts of assault in the third degree, including an assault on a police officer while resisting arrest. Because Morgunenko's primary language is Russian, the Stevens County Superior Court provided him with a certified interpreter.

On October 1, 2020, the State presented a written plea offer set to expire on November 30, 2020. The offer dropped count V, the second charge for violation of an antiharassment order. Additionally, the offer imposed a first-time offender sentencing waiver and identified similar confinement conditions as those later implemented by the sentencing court.

On appeal, Viktor Morgunenko contends defense counsel John Perry never conveyed the offer of settlement to him. Nevertheless, Morgunenko filed no statement

under oath confirming this claim. Even in his briefing, he does not assert that he would have accepted the State's offer.

The State scheduled a CrR 3.5 hearing for May 17, 2021 in order to introduce, at trial, statements uttered by Viktor Morgunenko to officers. The State requested a continuance for the hearing, to which defense counsel John Perry did not object. When asked by the trial court if the proposed dates for the postponed 3.5 hearing and trial were acceptable to Morgunenko, Perry replied:

> I spoke—I spoke to Mr. Morgunenko, and based on the language difficulty I wasn't certain if he's okay with that. I did explain to him the necessity of it. I agree with the necessity of it; but, if we could ask Mr. Morgunenko.

Report of Proceedings (RP) at 6. When asked by the trial court if the proposed dates were acceptable to him, Morgunenko responded:

> So, yes, I—I [indiscernible] I am not a criminal here. The only thing I did have is two speeding tickets, to both of—to both of [indiscernible]. He shot a person. He wasn't ordered chains. He said that he will take revenge to all of us, to all—against all of us. He can't go. He provoked conflict. He false testified to the Prosecutor, it's called—and I will say it in English—perjury to Prosecutor, and I have all the facts about him lying about that. And therefore, I just want to be—this game to be all over as soon as possible.

RP at 7. After agreeing to the proposed dates, Morgunenko added:

> But, I want you to know that all of [indiscernible] it's been one year. When I haven't had any interview with Mr. Perry [indiscernible] but one on phone. I have all the facts. I just need to have an interview, in person, with Mr. Perry and I can bring all of that there, and then something about him teaching his children or something like that [indiscernible].

4

RP at 8-9.

The motion to admit a confession hearing transpired on August 2, 2021. After speaking with Viktor Morgunenko, John Perry informed the trial court that Morgunenko elected not to testify at the hearing.

Trial was set to begin on January 24, 2022. On the morning of trial, defense counsel John Perry, however, requested a continuance because Viktor Morgunenko suffered headaches and faced a retina surgery. The trial court corrected Perry by confirming the retina surgery had occurred in 2021. Attorney Perry also informed the trial court he had just learned that Morgunenko received supplemental security income (SSI) for cognitive difficulties. Perry lacked records verifying Morgunenko suffered from cognitive impediments, but he told the trial court that Morgunenko's family members confirmed Morgunenko "is cognitively slow." RP at 36. Perry inserted:

> And in my dealings with him [Morgunenko], and they came more to the forward over the weekend, of—I came to realize that this was true. . .
> . . . .
> I have concerns, as a result, that Mr. Morgunenko may not have competency to comprehend these charges, as well as competency to effectively work with Counsel, through no fault of Mr. Morgunenko. In—in discussing the case with him, which I've done on a number of occasions, of course, but in discussing the case with him, I have come to the conclusion that it is very difficult for him to discuss actual defenses and, basically, he continues to go into the history of—history of his dealings and his family's dealings with the complaining witness in this matter Mr. Tsibulko. And I believe today much of that may be relevant, but I believe competency should—should be looked at.
> I've also come across a discovery issue only recently, in that there are a number of videos that were taken by the complainant, Mr. Tsibulko—

5

Tsibulko, I believe, and they're—basically, I think it's one continuous video, but it's broken down into different short videos, but I think it would be one continuous video of the instances alleged in this complaint in which Mr. Morgunenko's dog did—did bite or nip one of the alleged victims in this case. I believe it's Ranitta or Ranitta Tsibulko—Mr. Tsibulko's daughter. And it is alleged that the dog also bit Mr. Tsibulko.

The defenses to these issues are that—that—that that is something that happened, but through no fault of Mr. Morgunenko. In viewing these videos, Your Honor, I hadn't viewed them with sound before. This is the first time I realized that there is a great deal of dialogue between a number of people involved in this incident, including Mr. Tsibulko and Mr. Morgunenko. And that dialogue is in Russian, of course, which is the native language of both of these individuals.

Obviously, given at the time I wasn't able to interpret that, so I do have some concerns about that. I understand the State hasn't had those translated, either. So, that resource wasn't available to me either, in attempting to—to determine what the conversation is.

In short, Your Honor, these issues, I think combine, to make it questionable as to whether I can, under these circumstances, effectively do [indiscernible] to Mr. Morgunenko in this case. And the case is approximately a year and a half old, which is—you know, which it has been around for a while and we've had numerous discussions regarding it. But the items that I mentioned very recently came to my attention, especially the competency issue. And in discussions with Mr. Tsibulko's (sic) family, they believe that there are some issues, as well.

*Mr. Tsibulko (sic)—I'm sorry, Mr. Morgunenko's family—I'm speaking too fast—Mr. Morgunenko's*—Mr. Morgunenko resides with his father, who is present in court, and the family basically takes care of him. He does have an income from SSI, which he is able to receive, and his immigration status is that of a legal, permanent resident, which I believe is equal to a green card holder.

So, that has affected settlement negotiations, in so far as, obviously, under Supreme Court case law, Defense Counsel has an obligation to do his or her best to ensure that immigration consequences would be minimized to the extent possible by the plea.

RP at 37-39 (emphasis added) (alteration in original).

The trial court denied the request for a trial continuance. The court commented:

> [G]iven that, as Mr. Perry indicates, he was appointed to represent Mr. Morgunenko on June 29th of 2020, has represented him continuously since July 6th, 2020, and now on, basically, the eve of trial suggests there are significant issues preventing trial, that's simply not enough. There would be—I don't see anything from the doctor, as was indicated in an email. As I said, the Court is willing to accommodate Mr. Morgunenko for any pain-related issues, any breaks that he might need, just as it would the interpreter.

RP at 43. John Perry responded:

> Your Honor, I do want to reiterate before we move on, if I may, that I have—I have significant issues as to whether we are sufficiently prepared to proceed based on all of these items.

RP at 44.

Defense counsel John Perry did not file a witness list on Viktor Morgunenko's behalf. Perry informed the trial court he anticipated calling Sergey and Nikoly Morgunenko.

Before trial commenced, Viktor Morgunenko, through counsel, submitted a CrR 4.4 motion to sever, while his counsel acknowledged the failure to write a brief in support of the motion. Morgunenko, through counsel, sought to sever the charges based on the June 22 conduct from charges attributed to the June 27 behavior. While arguing in support of this motion, John Perry mistakenly referred to Morgunenko as "Mr. Tsibulko" for the second time. RP at 49-50. The trial court denied the motion and trial began.

During trial testimony of Alexei Tsibulko, the State played for the jury the video recording taken by Alexei on June 22. The language spoken in the video was Russian.

7

The trial court repeatedly paused the video and asked Alexei to identify the action

depicted.

The jury found Viktor Morgunenko guilty on all five charges.

Before sentencing, Viktor Morgunenko filed a complaint with the state bar

association against attorney John Perry. In the complaint, Morgunenko wrote:

> My public defender shows no interest [in] defending me or
> discuss[ing] my situation. I have tried repeatedly to speak to him to no
> avail. He is distant, unhelpful and no[t] responsive. He appears determined
> to [ignore] me. I'm starting to think he is biased against me and may
> purposefully be sabotaging my case. I am asking to be assigned a a new
> public defender, someone who will actually show [i]nterest in [l]istening to
> me and helping me with my case.
> For as long as 1.5 years I never met him once.
> Thank you very much in advance.

CP at 69. Morgunenko retained new counsel, Michael Golden, before the sentencing

hearing.

The superior court ordered that the parties address Viktor Morgunenko's criticisms

of John Perry during sentencing. In a sentencing memorandum, counsel Michael Golden

wrote:

> [Morgunenko's] family insists that they tried to meet with Mr. Perry
> on multiple occasions to explain the history with Mr. Tsibulko but that he
> would only meet with him in the hallway outside the courtroom on court
> days. There is no indication Viktor [Morgunenko] ever sat down with Mr.
> Perry in his office or anywhere else other than the hallway of the
> courthouse. Viktor and the family believe that Mr. Perry never reviewed
> the video of the charged incident until very close to trial, even though they
> kept asking him about it.

8

There was an offer in the case (attached), but Viktor denies that it was ever provided to him. There are clearly immigration consequences for a Soviet immigrant who is not a U.S. citizen being convicted of several felonies, including an assault upon a police officer, but Viktor states this was never discussed with him. At the time of trial, he had no idea what immigration consequences might result.

There is a practice advisory available to attorneys with regard to potential Assault 3 convictions (attached), and it is clear that Viktor Morgunenko is at risk of a federal removal prosecution as a result of the Assault 3 Resisting Arrest conviction. He should have been advised of this and this should have been part of plea discussions in the case, but it appears this did not happen. The twist here is that Viktor is a man without a country. The USSR no longer exists, and Viktor cannot be deported to a country that no longer exists, so it is likely that even if the federal government looks to take action against Mr. Morgunenko as a result of these convictions, he may ultimately be released back to this community. Given the current political climate involving Russia and the Ukraine, we can only hope that the federal government does not take a special interest in this case.

CP at 83-84.

Viktor Morgunenko's sentencing hearing occurred on March 1, 2022. The sentencing court imposed a first-time offender waiver and ordered Morgunenko undergo a mental health evaluation as part of his community custody conditions. The sentencing court commented:

I think there are some intellectual challenges for Mr. Morgunenko; but, I also think that those at least appear to be exacerbated by mental health problems. The [d]efense [b]rief indicated some mental health problems that had been treated after he arrived in the United States, but there's no record of them, perhaps by passage of time.

But it's evident to me that he would benefit from a mental health evaluation and following any recommended treatment. Mr. Morgunenko also referenced himself medication that he takes, and it didn't sound as if it

was for his physical condition.  So, I'm not sure who he sees, or whether he sees someone for mental health.

RP at 432.

## LAW AND ANALYSIS

On appeal, Viktor Morgunenko challenges his convictions because of ineffective assistance of counsel.  He also challenges the portion of his sentence that directs him to submit to a mental health evaluation.

### Ineffective Assistance of Counsel

Viktor Morgunenko challenges the adequacy of the legal representation by defense counsel John Perry because Perry failed to communicate an offer of settlement to Morgunenko, failed to inform him of immigration consequences of a conviction, failed to timely seek a competency evaluation of Morgunenko, inadequately communicated with him in order to understand the case, failed to sufficiently review evidence before trial, and failed to follow court rules.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel.  *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018).  To prevail on an ineffective assistance of counsel claim, a defendant must prove that (1) his or her counsel performed deficiently, and (2) counsel's deficient performance resulted in prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Classen*, 4 Wn.

10

App. 2d 520, 535 (2018).  Performance is deficient if it falls below an objective standard

of reasonableness.  *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).  To show

prejudice, a defendant must demonstrate a reasonable possibility that, but for counsel's

purportedly deficient conduct, the outcome of the proceeding would have differed.  *State*

*v. Classen*, 4 Wn. App. 2d 520, 535 (2018).

If a defendant fails to satisfy either prong, a court need not inquire further.

*Strickland v. Washington*, 466 U.S. 668, 697 (1984); *State v. Kyllo*, 166 Wn.2d 856, 862,

215 P.3d 177 (2009).  We separately analyze each of the grounds on which Viktor

Morgunenko asserts ineffective assistance.

*offer of settlement*

Viktor Morgunenko first asserts ineffective assistance of counsel based on the

purported failure of attorney John Perry to notify him of the October 2020 offer to settle

the prosecution.  We agree with Morgunenko that effective representation must include

communicating settlement offers from the State.  *State v. Estes*, 193 Wn. App. 479, 493-

94, 372 P.3d 163 (2016), *aff'd*, 188 Wn.2d 450, 395 P.3d 1045 (2017).  Nevertheless, we

reject his contention because the trial court record lacks any testimony under oath of a

failure to forward the settlement offer and Morgunenko does not contend he would have

accepted the offer.

The record on appeal contains only one reference to John Perry's alleged failure to

forward the settlement offer.  In the sentencing memorandum, Viktor Morgunenko's

11

sentencing counsel reported that, when he spoke with Morgunenko, Morgunenko denied

that Perry ever communicated the State's plea offer to him.

We adjudge competency of counsel based upon the entire record below. *State v.*

*McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995); *State v. Munoz-Rivera*, 190 Wn.

App. 870, 887, 361 P.3d 182 (2015). When the accused asserts the claim of ineffective

assistance of counsel on direct appeal, this court will not consider matters outside the trial

court record. *State v. McFarland*, 127 Wn.2d 322, 335 (1995).

No Washington court has addressed whether this court should consider statements

written by counsel in a legal memorandum when deciding claims of ineffective

assistance. One southern court has held that an assertion of ineffective assistance of

counsel must not only be supported by affidavits, but affidavits other than the defendant's

affidavit. *Miles v. State*, 2019-CA-00797-COA, 301 So. 3d 718, 722 (Miss. Ct. App.

2020). The Mississippi court will excuse that obligation by a showing that the petitioner

has good cause for failing to obtain those affidavits. *Walden v. State*, 2014-CT-00165-

SC, 201 So. 3d 1042, 1045 (Miss. 2016). We do not follow the Mississippi court

completely and would accept an affidavit from Viktor Morgunenko, but decline to

entertain an unsworn comment by counsel.

We recognize difficulty in sentencing counsel's communicating with Viktor

Morgunenko because of a difference in primary languages. Nevertheless, counsel could

have employed an interpreter to assist in obtaining a sworn statement from Morgunenko.

12

Morgunenko does not explain on appeal any reason for his not supplying the superior court with an affidavit at sentencing.

We might be more lenient in holding Viktor Morgunenko to his burden of showing ineffective assistance of counsel except that Morgunenko may file a timely personal restraint petition, at which time this court will review matters outside the trial court record. *State v. McFarland*, 127 Wn.2d 322, 338 (1995). Morgunenko may then submit a comprehensive sworn statement to support his claim that attorney John Perry ineffectively represented him.

Even if we accepted as verity the failure to communicate the offer, Viktor Morgunenko fails to assert that he would have accepted the offer. He also fails to contend, let alone demonstrate, that he might have been able to negotiate a better plea agreement. Thus, he falls short in showing prejudice. If an accused seeks to overturn a conviction based on his trial counsel's failure to forward an offer to settle, the accused must establish that he would have accepted the offer and the trial court would have confirmed the plea agreement. *State v. Drath*, 7 Wn. App. 2d 255, 267, 431 P.3d 1098 (2018).

*immigration consequences*

In his sentencing memorandum, sentencing counsel Michael Golden wrote that Viktor Morgunenko is a Soviet Union émigré who has not gained United States citizenship. Counsel suggested that Morgunenko will suffer immigration consequences,

including possible removal from this country, as the result of his five convictions, particularly his assault on a police officer. Counsel posed the interesting problem of Morgunenko's departed nation, the Soviet Union, no longer existing. Counsel also expressed fear for Morgunenko as a result of Russia being at war with Ukraine. He did not identify Morgunenko as Ukrainian, although we recognize his surname as Ukrainian. According to the memorandum, attorney John Perry never discussed with Morgunenko immigration consequences resulting from convictions.

We recognize that, when the person charged with a crime is not a citizen of our nation, the right to effective counsel includes the right to be advised, by counsel, of any easily ascertainable immigration consequences that result from the charge. *Padilla v. Kentucky*, 559 U.S. 356, 360, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010); *In re Personal Restraint of Garcia-Mendoza*, 196 Wn.2d 836, 840, 479 P.3d 674 (2021). Nevertheless, we reject Viktor Morgunenko's contention because the lack of support for the claim outside the memorandum written by counsel. Morgunenko filed no affidavit supporting the allegations. Morgunenko does not identify what steps he would have taken had he been given proper immigration advice, assuming him to lack United States citizenship. We do not know what, if any, immigration consequences result from a conviction. We note that sentencing counsel particularly worried about the conviction for assaulting a law enforcement officer. Under the plea offer from the State, Morgunenko would have pled guilty to this offense.

On the day trial commenced, trial attorney John Perry informed the court of a concern about Victor Morgunenko's citizenship status as a lawful permanent resident, and he commented that Morgunenko's status as a noncitizen resident affected settlement negotiations. This comment by Perry does not enlighten us to whether Perry failed to know and failed to research immigration law, the dictates of immigration law as pertaining to Morgunenko, whether the immigration consequences were easily ascertainable, and how concerns of Morgunenko's status affected settlement negotiations.

Viktor Morgunenko relies on *State v. Estes*, 188 Wn.2d 450 (2017), to support his contention that his attorney performed ineffectively by failing to know the immigration consequences of his conviction. In *State v. Estes*, the Supreme Court held that Kevin Estes' trial counsel performed substandardly by failing to advise Estes that one of the crimes, with which the State charged him, qualified him as a persistent offender if convicted. Nevertheless, trial counsel had admitted on the record that he lacked knowledge of this section of the law. The record further showed that Estes may have accepted a settlement offer that would have freed him from the peril of a persistent offender status if his counsel properly advised him.

Victor Morgunenko's appeal lacks such a concession on the record by his trial counsel, let alone any establishment of prejudice resulting from any failure on the part of counsel to know immigration law. Kevin Estes' conviction indisputably had adverse

15

consequences. We do not know if Morgunenko's conviction garnered immigration penalties.

*competency evaluation of Morgunenko*

Viktor Morgunenko next contends attorney John Perry performed below the requisite standard of care by failing to timely seek a competency evaluation. Morgunenko argues that, as a result of the lack of communication between Perry and him, critical questions about the latter's competency only came to light late in the process. Morgunenko adds that, by the time of trial, he was indisputably incompetent.

We agree that the record shows questions about Viktor Morgunenko's competency, although we disagree that the record establishes incompetency. The record also shows John Perry delayed in informing the trial court of questions about competency. On the day of the trial, attorney Perry informed the trial court he had just learned that Morgunenko received government support for cognitive difficulties. Perry then notified the court that Morgunenko's family described Morgunenko as mentally slow and that Perry's own contact with Morgunenko during the past weekend had suggested cognitive impairment. Perry encountered difficulty discussing the case with his client without Morgunenko perseverating. Still, Perry lacked records verifying Morgunenko suffered from cognitive impediments. At sentencing, Morgunenko provided no records establishing any difficulty in understanding the charges against him or an inability to assist his counsel in defending the charges.

16

Without deciding the question of whether attorney John Perry performed ineffectively by failing to explore Viktor Morgunenko's competency, we recognize some evidence supports such a conclusion. Nevertheless, we need not decide any substandard performance because the record does not establish any prejudice. We lack sufficient evidence to conclude that Morgunenko was incompetent at the time he stood trial.

*inadequate communication*

Viktor Morgunenko complains that attorney John Perry failed to communicate with him during the course of the prosecution. He emphasizes Perry's failure, before trial, to review with him the video played to the jury. Morgunenko argues that Perry's failure to communicate impacted the outcome of his trial.

We note that evidence supports the contention that trial defense counsel failed to reasonably communicate with Viktor Morgunenko. During the motion to postpone trial argued at the beginning of trial, attorney John Perry all but admitted forsaking communications with Morgunenko in preparation for trial. In his sentencing memorandum, sentencing counsel Michael Golden highlighted that Morgunenko's family repeatedly, but unsuccessfully, tried to talk with Perry about the video. We agree defense counsel holds a duty to communicate with his client. *State v. Estes*, 188 Wn.2d 450, 466 (2017).

Viktor Morgunenko broadly contends that a failure to communicate casts doubt on the validity of his convictions. But, Morgunenko provides no reasoned analysis as to

what communications occurred, the number of communications, what specific

communications were needed other than a review of the video, how the review of the

video in advance with Morgunenko would have changed John Perry's presentation at

trial, and how Perry would have improved the presentation of the case with sufficient

communications. Morgunenko carries the burden of showing prejudice. Based on the

sparse record before this court on appeal, we conclude that Morgunenko did not meet this

burden.

*insufficient preparation*

Related to Viktor Morgunenko's contention of his counsel's failure to

communicate, Morgunenko also contends his counsel failed to properly prepare for trial.

He underscores that, during the motion to continue the trial, attorney John Perry admitted

he had only recently reviewed the video documenting the June 22, 2020 altercation.

Perry added that he had not known the video contained sound. We readily admit that one

of the most important duties of criminal trial counsel is to thoroughly investigate the facts

behind the criminal charges and to prepare for trial. *Strickland v. Washington*, 466 U.S.

668, 688 (1984); *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018).

We provide the same answer to this additional allegation of ineffective assistance

as with the charge of failing to communicate. Other than the failure to timely listen, if

not view, the video of the altercation and the failure to speak with him, Viktor

Morgunenko fails to identify what other steps attorney John Perry should have taken to

18

prepare for trial and to supply him legal advice. Although he asserts that the failure to prepare casts doubt on his convictions, he provides insufficient analysis for us to conclude he met his burden of proof to show prejudice.

*violation of court rules*

In passing, Viktor Morgunenko contends his counsel violated court rules. He does not identify the rules and how the violation impacted the presentation of his case. Generally, a party's failure to provide argument and citation to authority in support of an assignment of error, as required by RAP 10.3, precludes appellate consideration of an alleged error. *In re Dependency of W.W.S.*, 14 Wn. App. 2d 342, 350 n.4, 469 P.3d 1190 (2020).

Mental Health Evaluation

Viktor Morgunenko argues that the trial court abused its discretion by ordering he undergo a mental health evaluation as part of his community custody conditions without making findings demanded by RCW 9.94B.080 and RCW 71.24.025. RCW 9.94B.080 declares in part:

> The court may order an offender whose sentence includes community placement or community supervision to undergo a mental status evaluation and to participate in available outpatient mental health treatment, *if the court finds that reasonable grounds exist to believe that the offender is a mentally ill person as defined in RCW 71.24.025, and that this condition is likely to have influenced the offense*.

(Emphasis added.)  RCW 71.24.025(36) defines "mentally ill person" by referencing

other definitions within the same statute:

> "Mentally ill persons," "persons who are mentally ill," and "the mentally ill" mean persons and conditions defined in subsections (2), (12), (44), and (45) of this section.

The listed subsections read:

> (2) "Acutely mentally ill" means a condition which is limited to a short-term severe crisis episode of:
> (a) A mental disorder as defined in RCW 71.05.020 or, in the case of a child, as defined in RCW 71.34.020;
> (b) Being gravely disabled as defined in RCW 71.05.020 or, in the case of a child, a gravely disabled minor as defined in RCW 71.34.020; or
> (c) Presenting a likelihood of serious harm as defined in RCW 71.05.020 or, in the case of a child, as defined in RCW 71.34.020.
> . . . .
> (12) "Chronically mentally ill adult" or "adult who is chronically mentally ill" means an adult who has a mental disorder and meets at least one of the following criteria:
> (a) Has undergone two or more episodes of hospital care for a mental disorder within the preceding two years; or
> (b) Has experienced a continuous psychiatric hospitalization or residential treatment exceeding six months' duration within the preceding year; or
> (c) Has been unable to engage in any substantial gainful activity by reason of any mental disorder which has lasted for a continuous period of not less than twelve months.  "Substantial gainful activity" shall be defined by the authority by rule consistent with Public Law 92-603, as amended.
> . . . .
> (44) "Seriously disturbed person" means a person who:
> (a) Is gravely disabled or presents a likelihood of serious harm to himself or herself or others, or to the property of others, as a result of a mental disorder as defined in chapter 71.05 RCW;
> (b) Has been on conditional release status, or under a less restrictive alternative order, at some time during the preceding two years from an evaluation and treatment facility or a state mental health hospital;

20

(c) Has a mental disorder which causes major impairment in several areas of daily living;
(d) Exhibits suicidal preoccupation or attempts.

RCW 71.24.025(45) lacks relevance because it defines a "severely emotionally disturbed child."

In *State v. Shelton*, 194 Wn. App. 660, 378 P.3d 230 (2016), the State conceded that the trial court did not comply with the requirements of RCW 9.94B.080 in ordering Michael Shelton to undergo a mental health evaluation. The trial court instead found that mental health issues contributed to the offense and that treatment was reasonably related to the circumstances of the crime and reasonably necessary to benefit the defendant and the community. This court read the plain and unambiguous language of former RCW 9.94B.080 (2008) to state the superior court may order a mental health evaluation only if the court found Shelton was a mentally ill person as defined in RCW 71.24.025. This court remanded the prosecution to the superior court to determine whether Shelton's condition qualified as a mental health illness under the statute.

This court reached an identical result in *State v. Brooks*, 142 Wn. App. 842, 176 P.3d 549 (2008). The sentencing court found Terry Brooks competent to stand trial but never entered a finding that Brooks was mentally ill and that the condition most likely influenced the offense. This court held that the sentencing court had no authority to impose mental health evaluation and treatment.

21

Viktor Morgunenko's sentencing court failed to comply with the requirements of RCW 9.94B.080 when ordering that Morgunenko undergo a mental health evaluation. Thus, we rule that the trial court abused its discretion.

CONCLUSION

We reject Viktor Morgunenko's contention that ineffective assistance of counsel requires a reversal of his five convictions. We instead affirm the convictions without prejudice to Morgunenko to seek relief through a personal restraint petition. We vacate the order directing Morgunenko to undergo a mental health evaluation and remand for a hearing in conformance with RCW 9.94B.080.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Lawrence-Berrey, J.